The **HARTFORD FIRE INSURANCE COMPANY**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

No. 71–1385.

United States Court of Appeals, Eighth Circuit.

March 22, 1972.

Rehearing and Rehearing En Banc Denied April 18, 1972.

John M. Flynn, Atty., N.L.R.B., Washington, D. C., Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Jerome N. Weinstein, Morton Namrow, Attys., N.L.R.B., for respondent.

Lawrence M. Cohen, Lederer, Fox & Grove, Chicago, Ill., for petitioner.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

PER CURIAM.

Petition for review and cross-application for enforcement of a Decision and Order of the National Labor Relations Board, reported at 191 N.L.R.B. No. 78.

The Board found that the Hartford Fire Insurance Company (Hartford) had not bargained in good faith with the Office and Professional Employees Union, Local 320, AFL-CIO (Union), after that Union's certification as the bargaining representative for Hartford's claims adjustors, in violation of § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., and that Hartford had engaged in an unfair labor practice by granting unilateral wage increases to some adjustors during the pendency of the bargaining, also in violation of § 8(a) (5) and (1). The Board ordered Hartford to bargain in good faith and to make no more wage increases without bargaining.

Hartford contends that there is not sufficient evidence on the record considered as a whole to support the Board's findings both as to the refusal to bargain in good faith and the wage increases. We have reviewed the record in accordance with Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951), and find that there is substantial evidence to support the Board's findings.

*A. The Collective Bargaining Sessions*: The bargaining sessions got off to a rather slow start due to Hartford's delay in furnishing requested bargaining information to the Union. The parties met a total of thirteen times between July 14, 1969, and January 15, 1970. At the first three bargaining sessions a number of specific issues were resolved, some being the result of the Union accepting Hartford's proposals and the others resulting from Hartford's acceptance of the Union's proposals. At the sixth bargaining session an attorney from Chicago became the negotiator for the Company.

The Trial Examiner found that the Chicago attorney frequently interrupted the ensuing bargaining sessions with time-consuming "[a]rticle reading, story telling and philosophical discussions." Hartford contends its negotiator was attempting to persuade the Union to his thinking, and convince the Union of the Company's thinking. However, no realistic counter-proposals were subsequently offered by the Company; although it alleged on several occasions that it had some, these were never presented to the Union. No new areas of agreement were reached in spite of some counter-proposals offered by the Union and its often indicated willingness to listen to other offers by Hartford, which were never revealed. In fact Hartford subsequently retreated from previously agreed items. The sum total of these actions was that negotiations were not as far along at the thirteenth bargaining session as they were at the third.

While all agreements are tentative until the final "package" has been ratified, the entire context of the bargaining sessions in this case gives the distinct impression that Hartford had no intention of reaching an agreement after the sixth bargaining session. The Board was warranted on this evidence in finding a failure to bargain in good faith.

 *B. The Unilateral Wage Increases:* On June 4 the Company sent a letter to the Union and a copy to each member of the bargaining unit. It read, in pertinent part:

"Subject to your approval and the condition which is explained below, we propose during the period of contract negotiations to resume our policy of reviewing each individual's performance and granting salary increases to those who in our opinion merit an increase. * * *

"Before we resume this policy we believe it is important to have an understanding that the Company's evaluation and decision with respect to each individual will not be questioned by the Union or the individual involved or be made the subject of an unfair labor practice charge. * * * We do not wish to take this action if it means that we are placing ourselves in a position where we may have to defend our decision against a charge of discrimination."

To this letter the Union replied, in pertinent part:

" * * * the Union cannot waiver [sic] its statutory right to file charges if it believes the law to have been violated. And, furthermore, an individual has the same statutory right to file charges and the Union has no authority to abrogate such right.

"Our position is nearing completion, and we should be in position to start negotiations in about two weeks. We suggest that this issue be resolved in negotiations."

No other action was taken on this subject until the third bargaining session on August 18, 1969. At that time Hartford announced that it was going ahead with the wage review program. The amounts of the raises had been set and announced to all. Eight of thirteen adjustors were to be awarded raises. The Union reserved the right to file charges. The raises were put into effect on August 25.

A second round of wage increases was instituted in a similar manner in February 1970.

The totality of the circumstances in which the Company presented these proposals make it clear that the Company did not intend to bargain on the subject of these pay increases. *See* NLRB v. Huttig Sash & Door Co., 377 F.2d 964 (8th Cir. 1967). These unilateral wage increases are clearly a violation of the Act. NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

Board's Order is enforced.