### NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

### IOWA BEEF PROCESSORS, INC., Respondent.

### Local 222, United Food and Commercial Workers International Union, AFL–CIO, Intervenor.

### No. 81–1826.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1982.

Decided April 19, 1982.

Vivian A. Miller, Richard A. Cohen, N. L. R. B., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Alaniz, Bruckner & Sykes, James C. Zalewski, Charles E. Sykes, Lincoln, Neb., for respondent.

Irving M. King, Peggy A. Hillman, Michael H. Slutsky, Chicago, Ill., for intervenor; Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., of counsel.

Before BRIGHT, HENLEY and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

This matter comes before the court on petition for enforcement of an NLRB order requiring Iowa Beef Processors, Inc. (IBP), to reinstate and make whole five employees who were discharged in connection with a strike at IBP's plant in Dakota City, Nebraska. The issue before this court is whether the Board correctly determined that IBP violated sections 8(a)(1) and (3) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1) and (3), by discharging the five employees for engaging in protected activity. The NLRB's determination is supported by substantial evidence, and, accordingly, we enforce the order in full.

I. *Background.*

On January 23, 1977, the bargaining contract covering the production employees at IBP's Dakota City plant expired. The employees struck to bolster their union's [1] bargaining position. The strike lasted from February 26, 1977 until May 1, 1978, when a newly negotiated contract went into effect. During the strike, union members at times engaged in violent and destructive activity, leading to an NLRB determination that the Union committed unfair labor practices in

violation of section 8(b)(1)(A) of the Act, 29 U.S.C. § 158(b)(1)(A). On November 30, 1977, the NLRB entered a cease and desist order against the Union. Illegal union activity continued to occur, and on December 16, 1977, this court issued an injunction under sections 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f), which was virtually identical to the Board's cease and desist order.[2] Thereafter, at least two more union demonstrations involving destructive activity took place at the Dakota City plant—one on December 30, 1977, and one on March 4, 1978.

The five employees whose discharges are at issue supported the union and the strike. By letters dated January 17, 1978, IBP informed Norman Hilbers, Angel Lopez, and Connie Wingert that they were discharged "as a result of [their] participation in unlawful conduct on the morning of December 30, 1977 * * *." Robert Lewis received a letter, also dated January 17, 1978, discharging him "as a result of [his] participation in unlawful conduct on May [9], 1977 * * *."[3] Myrtle Peck received a letter, dated March 15, 1978, stating that she was discharged "as a result of [her] participation in unlawful conduct on March 4, 1978

---

1. The employees are members of Local 222, United Food and Commercial Workers International Union. Prior to June 1979, the Union was known as Local 222, Amalgamated Meat Cutters and Butcher Workmen of North America.

2. The injunction required the Union to cease and desist from:

(a) Restraining or coercing employees of Iowa Beef Processors, Inc. (IBP) and/or employees of Farm Products Company by any of the following conduct which tends to discourage employees in the exercise of their right to work for either of the above employers, or any other employer, and the right not to join or support any strike: Threatening employees with bodily harm and/or property damage; hindering or blocking in any manner the ingress and egress of employees' automobiles, trucks, or other vehicles seeking to enter or exit any of the gates provided by IBP or Farm Products Company; throwing rocks, dirt clods, or firewood, or shooting steel ballbearing from a slingshot at any employee or vehicle attempting to enter the premises of IBP at Dakota City, Nebraska, or directing such missiles toward employees or

company property located in Dakota City, Nebraska; placing glass, nails, screws, logs, or similar material on the highways or driveways at or near any of the exits and entrances into the IBP plant at Dakota City; following vehicles of employees to and/or from picket lines and driving in a dangerous and reckless manner intended to harass and intimidate nonstriking employees; scratching, kicking, rocking, hitting with picket signs, jumping upon, pounding fists, and/or in any other manner causing damage to vehicles of employees and supervisors entering and exiting the struck premises; physically assaulting or in any similar manner hindering and seeking to prevent nonstriking employees from entering the IBP plant premises; making harassing or threatening telephone calls to employees; recording license numbers of vehicles crossing picket lines and posting the names of nonstrikers at either the union headquarters or the strike headquarters[.]

3. The first letter IBP sent to Lewis specified May 19 as the date of his unlawful activity, but IBP later amended that date to May 9.

* * *." None of the letters, however, specified any particular unlawful activity.

In a hearing before an administrative law judge in October 1979, the parties developed the facts surrounding these five discharges. IBP attempted to prove that Hilbers, Lopez, and Wingert participated in destructive activity at the December 30, 1977, demonstration, and that Peck participated in destructive activity at the March 4, 1978, demonstration. The administrative law judge acknowledged that violent and destructive behavior occurred at each of those demonstrations, but concluded that none of these four employees engaged in such conduct. Specifically, the administrative law judge determined that Wingert was not even present at the demonstration, and that the other three employees, although present, were peaceful strike participants.

IBP based its discharge of Lewis on an incident that occurred at a gas station where Lewis worked during the strike. On May 9, 1977, Lewis shoved a woman customer after she informed him that her companion worked for IBP during the strike. The gas station employer fired Lewis as a result of this incident. The administrative law judge found that IBP had used the gas station incident as a pretext to hide its real reason for discharging Lewis—his support of the strike. The NLRB specifically agreed with this finding.

II. *Discussion.*

■ In its order, the NLRB fully adopted the administrative law judge's conclusions that IBP had discharged each of these employees for engaging in protected activity, and that the employees had not participated in misconduct so flagrant or egregious as to take them out of the Act's protection. *See W. C. McQuaide, Inc.,* 220 NLRB 593, 593–94 (1975), *enforced in part and remanded on other grounds,* 552 F.2d 519 (3rd Cir. 1977). IBP disputes the accuracy of these findings. After carefully reviewing the record, we conclude that the NLRB's order is supported by substantial evidence.

■ The key findings regarding the employees' conduct and IBP's reasons for the discharges rest on credibility determinations made by the administrative law judge. We will not overturn findings based on credibility determinations unless they shock our conscience. *See Keokuk Gas Service Co. v. NLRB,* 580 F.2d 328, 334 (8th Cir. 1978); *NLRB v. Valmac Industries, Inc.,* 533 F.2d 1075, 1076 (8th Cir. 1976). We conclude that these findings were supported by the evidence.

IBP further argues that the administrative law judge and the NLRB used an incorrect test for determining whether these employees' actions were protected by the Act. According to IBP, the Act does not protect any activity referred to in this court's injunction issued on December 16, 1977. Thus, although the employees attending the demonstrations may not have engaged in violent or destructive acts, IBP argues that they violated the injunction by taking part in crowd activity designed to block access to IBP's plant. Under this analysis, IBP could have lawfully discharged any employee attending the demonstration, because his or her mere presence made access to the plant more difficult.

■ The NLRB rejected this argument, holding that the scope of the Act's protection is not defined by the scope of an injunction. *See W. C. McQuaide, supra,* 220 NLRB at 594; *NLRB v. Cambria Clay Products,* 215 F.2d 48, 54 (6th Cir. 1954). We agree. The injunction in this case was not intended to serve as a basis for discharging every employee who attended a mass union demonstration; it was intended to curb the union's violent and destructive excesses. IBP failed to convince either the administrative law judge or the NLRB that any of these five employees participated in unlawful conduct sufficient to remove him or her from the Act's protection. Nothing in the record leads us to overturn that determination. Accordingly, we enforce in full the order of the NLRB.