**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**VINCENT BRASS & ALUMINUM CO., Respondent.**

No. 83–1417.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1983.

Decided April 9, 1984.

1982) directing Vincent Brass & Aluminum Company (Company) to cease and desist from various unfair labor practices, to restore the job bidding procedure contained in the collective bargaining agreement, and to reinstate all unlawfully laid off employees and compensate them for any lost earnings. The Company contends that the Board erred in finding that the Company violated sections 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), and (5) (1976). We conclude that the findings of violation are supported by substantial evidence on the record as a whole, and we therefore grant enforcement of the order.

## I. *Background.*

The Company is a nationwide business engaged in the warehousing, non-retail sale and distribution of metal products. Its St. Louis operations are conducted at three separate work sites under the direction of a general manager, who at the time in question was Michael White. The Company entered into a collective bargaining agreement with the Union[1] effective in April 1981. Article VIII of the agreement required the Company to post notice of available job openings at all three St. Louis locations. Interested employees could sign a bid sheet, and the senior qualified employee would be awarded the job. In August and September of 1981, a number of positions were posted for bidding, and on several occasions, the Company permitted "down bidding" (requests to move to lower paying positions). Down bidding threatened production problems for the Company when trained and experienced machine operators attempted to move to less skilled positions.

In late September and early October of 1981, the Company's senior foreman and warehouse superintendent, Robert Rowan, allegedly made a number of statements

Paul J. Spielberg, Deputy Asst. General Counsel, Abby Propis Simms, William A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, Washington, D.C., for N.L.R.B.

McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., for respondent.

Before LAY, Chief Judge, BRIGHT, Circuit Judge, and HANSON,* Senior District Judge.

BRIGHT, Circuit Judge.

The National Labor Relations Board (NLRB) petitions for enforcement of its order (264 NLRB No. 70, September 29,

---

* The Honorable WILLIAM C. HANSON, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. Miscellaneous Drivers, Helpers and Public Employees Union, Local 610, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

threatening plant closings, layoffs, and other reprisals because so many employees were bidding on posted job openings and filing grievances. On September 23, in the presence of several employees, Rowan threatened to close the plant because of the Union. One employee heard Rowan say that he was tired of all the job bidding and he was "just going to lay off the second shift and eliminate the problem."

On September 25, the Company notified twelve unit employees, including all second shift employees, that they were being laid off because of lack of work. Six of the employees had signed job bid sheets.[2] The Union filed a grievance about the layoff, and after a meeting on September 28, General Manager White denied the grievance. White then stated that down bidding would no longer be permitted. Two days later, Rowan informed an employee that "there is just no more bidding at all." At another meeting on October 8, White indicated that he would assign employees to jobs without abiding by the terms of the collective bargaining agreement.

On October 5, the Union filed unfair labor practice charges with the NLRB. After a hearing, an administrative law judge (ALJ) found that the Company had violated section 8(a)(1) of the Act by threatening employees with reprisals for engaging in protected activities, sections 8(a)(3) and (1) of the Act by unlawfully laying off employees because of their union and protected activities, and sections 8(a)(5) and (1) of the Act by unilaterally terminating the contractual job bidding procedure. On September 29, 1982, the Board adopted the ALJ's decision, and entered the order it now seeks to enforce.

## II. *Issues.*

■ This court must enforce the NLRB's order if the Board correctly applied the law, and if its findings of facts are supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

## A. *Unlawful Statements and Threats.*

■ The Company contends that the Board erred in concluding that it violated section 8(a)(1) of the Act. Rowan and White denied making the unlawful statements attributed to them by various employees who testified at the hearing before the ALJ. The Board adopted the ALJ's determination crediting the employees' testimony that the statements had been made. We find no ground for overturning the Board's credibility determination. *See, e.g., NLRB v. Iowa Beef Processors, Inc.,* 675 F.2d 1004, 1006 (8th Cir.1982).

An employer violates section 8(a)(1) of the Act if it engages in conduct which reasonably tends to interfere with, restrain, or coerce employees in the free exercise of their rights under the Act. *Russell Stover Candies, Inc. v. NLRB,* 551 F.2d 204, 208 (8th Cir.1977). We agree with the Board that the statements in question, made by top management personnel in the St. Louis operation, had a foreseeable coercive impact and constituted a violation of section 8(a)(1).

## B. *The Layoff of Twelve Unit Employees.*

■ According to the Company, substantial evidence does not support the Board's finding that the September 25, 1981, layoff was in retaliation for the employees' protected activity in violation of sections 8(a)(3) and (1) of the Act. The Company argues that the layoffs were for economic rather than discriminatory reasons, and contends that a *Wright Line* analysis should be applied in this case. *Wright Line, A Division of Wright Line, Inc.,* 251 NLRB 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). Under *Wright Line,* when employees are discharged for both legitimate and illegitimate reasons, the general counsel must make a *prima facie* showing that the employees' protected activity was a "motivating fac-

---

**2.** Eight of the twelve were recalled by mid-Octo- ber, including four who had signed bid sheets.

tor" in the employer's decision. The burden then shifts to the employer to show that the same action would have taken place even in the absence of the protected conduct. *Id.* at 1089. *See also NLRB v. Fixtures Mfg. Corp.*, 669 F.2d 547, 550 (8th Cir.1982).

The Company asserts that the Board failed to carry its initial burden because the general counsel did not show that White, the Company official responsible for the layoff decision, knew of the employees' protected activity prior to September 24 when he decided on the layoff. Rather, the evidence revealed only that Rowan made coercive and threatening statements to employees on September 23 and 24. The Company argues that no connection was shown between Rowan's remarks and White's decision, and thus the evidence was inadequate to support the conclusion that employee protected activity was a motivating factor in the layoff. The Company further contends that even if knowledge of the protected activity were imputed to White, it presented ample evidence to show that the layoff was compelled by economic considerations and would have occurred anyway.[3] The Company alleges that the Board's rejection of its economic defense was based on an arbitrary and selective view of the evidence rather than on substantial evidence drawn from the record as a whole.

■ "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB, supra,* 340 U.S. at 488, 71 S.Ct. at 464. Moreover, that test does not mean as to matters not requiring expertise (as in this case) that "a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Id.* Thus, while

this court must take into account contradictory evidence in the record, the possibility that two inconsistent conclusions may be drawn from the evidence does not mean that the Board's findings are unsupported by substantial evidence, considering the record as a whole.

■ The record supports the Board's contention that Company officials knew of and were disturbed by the frequency of such employee activities as job bidding and the filing of grievances.[4] The evidence is sufficient to conclude that the employees' protected activity was a motivating factor in the employer's decision. Moreover, the Board found unpersuasive the Company's defense that the layoff was because of lack of work. The ALJ noted that the layoff occurred while orders were increasing over the previous month, that several days' work was available at the time of the layoff, and that various employees were called upon to perform overtime work shortly after the layoff occurred. The Board adopted the ALJ's conclusion that the Company's economic rationale was a pretext to conceal discriminatory motives. Thus, while the Company concededly made a significant showing that the layoff was for economic reasons, we cannot say that the Board's decision to the contrary was unsupported by substantial evidence based on the record as a whole.

### C. Termination of the Job Bidding Procedure.

■ The Company asserts that despite Rowan's intemperate remarks, it did not unilaterally terminate the contractual job bidding procedure, but indicated only that it would not permit down bidding. The Company contends that the prohibition on down bidding does not violate sections 8(a)(5) and (1) of the Act because the collective bargaining agreement neither requires

---

**3.** The Company presented evidence showing a drop in sales volume at the St. Louis branch, and reports indicating that staffing costs at the St. Louis operation were higher than at Company branches in other cities. In addition, Rowan and White testified that only two and one-half

days of work were expected to be available for the week following the layoff.

**4.** The ALJ's opinion adopted by the Board does not cite *Wright Line,* but the ALJ's analysis is consistent with the *Wright Line* framework.

nor permits it.[5] The Board concluded that Article VIII of the contract clearly allowed unrestricted bidding, including down bidding on jobs. The Board's interpretation of a collective bargaining agreement is entitled to deference when, as here, it has a reasonable basis in the contract terms, the policies of the Act, and the Board's expertise. *See, e.g., NLRB v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local No. 741*, 704 F.2d 1164, 1166 (9th Cir. 1983); *NLRB v. C.K. Smith & Co., Inc.*, 569 F.2d 162 (1st Cir.1977), *cert. denied*, 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1122 (1978). Moreover, the Board's interpretation is reinforced by the fact that the Company honored down bids on several occasions in August and September of 1981.

With regard to the Company's assertion that it did not terminate the job bidding procedure, the Board notes that certain jobs posted for bids before September 30, 1981, were never awarded. Given Rowan's explicit repudiation of further job bidding [6] and the Company's expressed dissatisfaction with the consequences of the procedure, substantial evidence supports the Board's conclusion that the Company violated sections 8(a)(5) and (1) of the Act by unilaterally terminating the job bidding procedure on September 30.

For the foregoing reasons, the Board's application for enforcement of its September 29, 1982 order is granted.

---

**5.** Article VIII of the collective bargaining agreement provides in pertinent part:

 Permanent job openings on new jobs or vacant permanent jobs will be posted by the Employer at the three locations for two (2) regular work days. The Employer will fill such openings with the senior employee who is qualified to perform the work in question properly, who signs the bid sheet to indicate that he desires said vacant or new job.

**6.** Rowan was responsible for administering the job bidding procedure.