NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MONARK BOAT COMPANY,
Respondent.

No. 85–2454.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1986.

Decided Aug. 29, 1986.

David Fleischer, Washington, D.C., for petitioner.

Tim Boe, Little Rock, Ark., for respondent.

Edward J. Gorman, Washington, D.C., for intervenor.

1. 276 N.L.R.B. No. 121 (1985).

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The National Labor Relations Board ("Board") seeks to enforce its order [1] that Monark Boat Company ("Monark") bargain with the United Brotherhood of Carpenters and Joiners of America, AFL–CIO ("UBC" or "Union"). This case was previously before this court, on the Board's application for enforcement of its 1982 order [2] certifying the UBC as exclusive bargaining representative. At that time we remanded the case to the Board to conduct an evidentiary hearing to determine whether certain "alleged coercive incidents had a chilling effect on the election." *NLRB v. Monark Boat Co.*, 713 F.2d 355, 362 (8th Cir.1983). On remand, the Board affirmed the conclusion of the Administrative Law Judge ("ALJ") that the environment at Monark was not so coercive as to intimidate any part of the work force at the time of the 1980 election. Because we find no abuse of discretion in the Board's actions, we enforce the Board's order.

## I. FACTS

In November 1980 the Board conducted a secret ballot election in a unit of Monark's production and maintenance employees in Monark's Monticello, Arkansas plant locations. The UBC won the election by a vote of 77 to 57, with 33 eligible voters abstaining. Monark filed 48 objections to the election. After conducting an administrative investigation, the Board's Acting Regional Director overruled all of Monark's objections and certified the UBC as the exclusive bargaining representative.

The Board denied Monark's subsequent request for review. When Monark refused the UBC's request for bargaining, the UBC filed an unfair labor practice charge against Monark alleging a refusal to bargain under 29 U.S.C. § 158(a)(1), (5) (1976).

2. 260 N.L.R.B. 615 (1982).

In its response Monark alleged that it need not bargain with the UBC because it had been denied an evidentiary hearing on its objections to the election. On March 4, 1982 the Board issued its order granting the General Counsel's motion for summary judgment and ordered Monark to bargain with the UBC. *Monark Boat Co.,* 260 N.L.R.B. 615, 618–19 (1982).

The Board then petitioned this court for enforcement of its order. This court declined to enforce the order, instead remanding the case to the Board to conduct an evidentiary hearing to resolve issues of fact raised by nine of Monark's objections.[3] *Monark Boat Co.,* 713 F.2d at 362. This court rejected Monark's contentions as to misrepresentation and electioneering, but held that nine of Monark's objections, taken together, raised a sufficient inference of intimidation and coercion to require an evidentiary hearing. In so holding this court noted that the alleged coercive acts were committed by union supporters and not union agents, and that a "threat made by a company or a union agent is a weightier piece of evidence." 713 F.2d at 360. The opinion stated the appropriate standard for this case: " '[R]epresentation elections will be set aside where nonparty misconduct has taken place and such conduct is shown to have created "an atmosphere of fear and reprisal such as to render a free expression of choice impossible." ' " *Id.* (quoting *NLRB v. Griffith Oldsmobile, Inc.,* 455 F.2d 867, 870 (8th Cir.1972)).

After conducting a three-day hearing on remand, the ALJ found on the basis of credibility determinations that the incidents alleged in objections 15b, c, d, e, and f had not occurred and recommended that those objections be overruled in their entirety. The ALJ further found that the incident in objection 15g involved no coercive conduct by anyone associated with the UBC, and that Monark had failed to show that the incidents in objections 23a and b and the last assertion in objection 11 were related

to the election; the ALJ likewise recommended that these objections be overruled. In its order the Board affirmed the ALJ's findings and conclusions, and determining that the November 1980 election was valid, reaffirmed the UBC's certification and its 1982 order. *Monark Boat Co.,* 276 N.L.R.B. No. 121 (1985). The Board now petitions this court for enforcement of its order, and Monark cross-petitions for review of the Board's decision.

## II. DISCUSSION

Monark makes three general contentions before this court: (1) that the Board's findings are not supported by substantial evidence on the record as a whole; (2) that the ALJ and the Board improperly limited the scope of the hearing on remand to the specific incidents alleged in the nine objections; and (3) that the Board applied the incorrect standard of review to Monark's objections to the election.

On review of the Board's certification determination, the standard is whether the Board reasonably exercised the " 'wide degree of discretion' vested in it by Congress regarding representation matters." *Beaird-Poulan Division, Emerson Electric Co. v. NLRB,* 649 F.2d 589, 592 (8th Cir.1981) (quoting *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 327–28, 91 L.Ed. 322 (1946)). *See also Wright Memorial Hospital v. NLRB,* 771 F.2d 400, 403 (8th Cir.1985). The Board's findings of fact, if supported by substantial evidence on the record as a whole, are conclusive. 29 U.S.C. § 160(e). This court will uphold credibility determinations made by the factfinder, unless such determinations shock its conscience. *NLRB v. Iowa Beef Processors,* 675 F.2d 1004, 1006 (8th Cir.1982); *Beaird-Poulan Division, Emerson Electric Co.,* 649 F.2d at 592.

### A. The Board's Findings

Turning first to the credibility determinations made by the ALJ, we find that the

---

**3.** The nine objections cited by Monark as raising issues of fact are objections 15b, c, d, e, f, g, 23a and b, and the last assertion in objection 11.

For a discussion of the incidents alleged in these objections, see *NLRB v. Monark Boat Co.,* 713 F.2d at 357–58.

ALJ's Supplemental Decision details the testimony of the witnesses who testified before him, and thoroughly sets out the reasons for crediting or rejecting their statements. Among the factors relied on by the ALJ in weighing the testimony of the witnesses were their demeanor, any changes in their testimony, the state of their memories, and any obvious biases they may have harbored. We fail to find these credibility determinations shocking to the court's conscience. We uphold, then, the findings of fact made by the ALJ (and affirmed by the Board) based on these credibility determinations as supported by substantial evidence on the record as a whole. We disregard, therefore, those alleged incidents which the ALJ found not to have occurred—objections 15b, c, d, e, and f—which primarily involved various threats allegedly made by employees who supported the Union.

■ The ALJ found that the incident alleged in objection 15g had occurred but had involved no unlawful pressure by anyone associated with the Union. Objection 15g alleged that Union supporter, Pat Barnett, while standing in line to vote on the day of the election, yelled to employee Robert White, who was not in line, to "Just do what I told you, Robert!", after which White got in line to vote. The ALJ credited White's testimony that Barnett's "hollering" had no effect on his decision to vote; Monark admits in its brief that White stated that he was not threatened by Barnett's yelling. Monark's assertion that Barnett's conduct "had a coercive impact and placed unlawful pressure upon Mr. White * * * as well as the fourteen other employees who observed him" is without support and contrary to White's own testimony. In sum, we affirm the Board's overruling of Monark's objection 15g.

■ As for the three alleged incidents in objection 23a and b and the last assertion

in objection 11, the ALJ found that the incidents took place but had no connection with the Union or the election. Objection 23a alleged that Union supporter Harry Densmore engaged in sabotage against Monark by causing three "accidents" that resulted in over $1,000 in damages. Objection 23b made a similar claim of sabotage, involving work stoppage on a boat by Union supporters Clemy Lambert, Bobbie Trotter, and Linda Johnson. The last assertion in objection 11 centered on the death by rat poisoning of a dog belonging to Mac Harrison, a supervisor at Monark. The ALJ found that although Densmore was indeed involved in three work accidents, Lambert, Trotter, and Johnson did stop work during the processing of a boat, and Harrison's Doberman Pinscher was killed by rat poisoning, none of these incidents was proved to be connected to the Union campaign. Monark bore the burden at the hearing of establishing that these incidents "were in fact acts of sabotage designed to intimidate the voters." *Monark Boat Co.*, 713 F.2d at 358. The incidents do raise suspicions, but the ALJ found in each instance that Monark had failed to establish any connection between the incidents and the Union. After reviewing the record we are satisfied that the ALJ's findings as to these objections are supported by substantial evidence and we therefore affirm the Board's overruling of these objections. Although the death of Harrison's dog appears suspicious, Monark proffered no evidence to establish a link between the dog's death and the Union, in particular the visit of Union supporter Mark Huff to Harrison's home six weeks before the dog died.[4] The dog's death stands as the act of an anonymous party that may or may not be related to the Union or the election. As such, the Board did not abuse its discretion in affirming the ALJ's conclusion that the dog's death alone could not form the basis for objection to

**4.** The ALJ found, on the basis of a credibility resolution, that an alleged visit after the dog's death to the Harrison home by Union supporter Robert Sumpter, who was laid off at the time, never took place. Even if the ALJ had credited

Harrison's testimony as to Sumpter's alleged visit, none of that testimony indicated in any way that Sumpter was responsible for or had any knowledge of the dog's death.

the election. *See Amalgamated Clothing & Textile Workers Union v. NLRB*, 736 F.2d 1559, 1568 (D.C.Cir.1984) (anonymous conduct that may not even be related to union or election entitled to little weight).

### B. The Scope of the Hearing on Remand

 Monark next argues that the ALJ and the Board improperly limited the scope of the hearing on remand to the specific incidents alleged in the nine objections. The ALJ and the Board erred, contends Monark, in rejecting evidence it proffered that, while not relating to the specific incidents alleged in the nine objections, did deal with the issue of coercion. Monark's contention is clearly without merit. Our remand of this case was a limited one, requiring the Board to "hold an evidentiary hearing to resolve issues of fact raised by objections 15b, c, d, e, f, g, 23a and b, and the last assertion in objection 11." *Monark Boat Co.*, 713 F.2d at 362. In proffering evidence outside the scope of those specific factual issues, Monark attempted to expand the scope of the hearing on remand, in effect trying for a "second bite at the apple." The ALJ and the Board did not err in limiting the scope of the hearing to the nine specific incidents.

### C. The Standard of Review

 Monark's remaining argument is similarly without merit. Monark asserts that the Board applied the incorrect standard of review to Monark's objections to the election. In this regard Monark first contends that the Board improperly stated that the standard for third-party misconduct should apply; that is, "whether an atmosphere of fear and coercion has been created such as to render a free choice impossible." Monark argues that because in-plant organizing committee members at Monark acted as agents or alter egos of the Union, the standard for party misconduct is appropriate. Monark further contends that the Board failed to consider whether the cumulative effect of the objectionable misconduct was sufficient to invalidate the election. The short answer to both parts of this argument is that the Board found no instances of misconduct on the part of anyone connected with the Union, whether it be individual employees or Union agents. Thus under any standard the Board acted within its discretion in validating the election. Because we uphold the Board's findings that none of Monark's objections was proved to be well taken individually, we must also conclude that taken collectively the objections fail to satisfy Monark's burden of establishing the 1980 election as invalid.

### III. CONCLUSION

Because the Board did not abuse its discretion in ordering Monark to bargain with the UBC, the Board's order is enforced.