**MEDALLION KITCHENS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Local No. 1267, Intervenor.**

No. 85–1548.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1986.

Decided Nov. 26, 1986.

Douglas P. Seaton, Minneapolis, Minn., for petitioner.

Paul Spielberg of the National Labor Relations Board, Washington, D.C., for respondent.

Before JOHN R. GIBSON, Circuit Judge, SWYGERT,* Senior Circuit Judge, and FAGG, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Medallion Kitchens, Inc. appeals from an order of the National Labor Relations Board holding that it violated section 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) (1982), by failing to reinstate returning strikers in place of temporary replacements and that it violated section 8(a)(1) by making coercive statements to the employees before the strike.[1]  Medallion argues that the

---

* The HONORABLE LUTHER M. SWYGERT, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The Board also determined that Medallion had violated section 8(a)(1) and (3) by withholding during the strike accrued and random day benefits, and Medallion appealed this decision.

Board erred as a matter of law in concluding that Medallion's workers were temporary rather than permanent. Medallion further argues that because its replacement workers were permanent, it was justified in recalling them from layoff status rather than recalling the strikers. In a related argument, Medallion asserts that it was not accorded due process in the proceedings because the General Counsel's theory of the case in the complaint misled Medallion into believing that the General Counsel was conceding the permanent status of the replacements when in fact the replacements' temporary status turned out to be the basis upon which the violation was found. Medallion argues finally that the finding concerning threats made before the strike is not supported by substantial evidence. After examining each of these arguments, we affirm the decision and order of the Board.

**Background:**

Local 1267 of the United Auto Workers represented Medallion's production and maintenance employees for more than ten years. The bargaining unit contained about 279 employees of whom about 250 were at work on an average day. The most recent collective bargaining agreement had an expiration date of September 19, 1983. About ten days before the workers were to vote on whether to strike, foreman Bruce Roeder approached an employee that he supervised, Tony Arechigo, and asked how he thought the vote would go. When Arechigo replied that there would probably be a strike, Roeder said, "you guys go on strike, the union is not coming back." On September 15, the unit employees voted to reject Medallion's latest contract offer and authorized the Union to call a strike when the contract expired. On that day picketing began at the plant and most of the unit employees did not come to work. Medallion continued to operate using non-strikers and replacements. The applicants for employment were told that the workers were on strike and that they would receive the normal starting rate of

$3.75 an hour. Medallion's Personnel Director told them that he did not know how long they would be working, "it might be a week, it might be less and it might be more * * * they would work up until the strike was over." ALJ Decision at 4.

On December 10, the plant's main building was destroyed by fire and production ceased. During the next few days Medallion contacted most of the post-strike employees through telephone calls and radio announcements to notify them of a meeting at the plant on December 15 and to tell them that the Christmas party would proceed as scheduled on December 17. At the December 15 meeting, Vice President Rone told the employees that Medallion was doing what it could to reopen as soon as possible. He told them to leave their current phone numbers with the company and to be ready to return to work. At the Christmas party on December 17, President Chalmers made a similar speech emphasizing that the company intended to get everyone back to work as soon as humanly possible.

On December 19, the Union informed Medallion that the strike would end as of December 25 and that all strikers would be unconditionally available for work the following day. On December 27 almost all of the strikers visited the company and left signed slips requesting reinstatement.

At the beginning of January 1984 Medallion began recalling employees to resume work. By the end of January fifty employees were at work and by late June, at the time of the hearing on the unfair labor practice charges, 114 had returned, but none of the former strikers had been recalled.

The Union then filed the unfair labor practice charges that led to the ultimate entry of the Board's order finding that Medallion had violated section 8(a)(1) and (3) of the Act.

**I.**

■ The Administrative Law Judge (ALJ) examined whether the replacement employ-

---

However, because Medallion has since paid these amounts with interest, the issue is moot.

ees had temporary or permanent status to determine whether Medallion violated the Act by failing to reinstate the economic strikers. A commitment to replacements that their positions are permanent may provide a substantial and legitimate business justification, which is a defense to a charge of unfair labor practices under section 8(a)(3). *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378–79, 88 S.Ct. 543, 545–46, 19 L.Ed.2d 614 (1967). Before we address Medallion's argument that substantial evidence does not support the finding that the replacements were temporary, we first address Medallion's assertion that it was denied due process because it was not fairly notified that the permanent status of the replacement employees was at issue.

In its complaint, the Board alleged the following:

5.(a) On or about December 19, 1983, the Union made an unconditional offer on behalf of all bargaining unit employees who had been engaged in an economic strike to return to work effective December 26, 1983.

(b) On or about December 26, 1983, Respondent placed the employees described above in subparagraph (a) on layoff status.

6.(a) Since on or about January 4, 1984, and continuing to date, Respondent has recalled striker replacements from layoff status and has failed and refused, and is continuing to fail and refuse, to recall any of the strikers, notwithstanding the fact that said strikers have more seniority than the striker replacements who have been recalled.

(b) Respondent engaged in the conduct described above in subparagraph (a) because the employees joined, supported, or assisted the Union, and engaged in concerted activities for the purpose of collective bargaining or other mutual aid or protection, and in order to discourage employees from engaging in such activities or other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

At the hearing there was some testimony regarding the permanency of the replacement workers' positions, and in its post-hearing brief, the General Counsel argued that the evidence did not establish that the replacements were permanent under the prevailing law, and that Medallion was not justified in refusing to reinstate the strikers.

Following the hearing and the filing of post-hearing briefs, Medallion moved to strike portions of the General Counsel's brief or, in the alternative, to reopen the record to permit Medallion to present additional testimony. Medallion asserted that the Board's complaint did not give notice that the permanent status of the replacement employees was in dispute. Medallion argued that, in fact, the sole issue raised by the General Counsel's theory of the case was whether the replacements had seniority over the strikers, an issue that is relevant only if the permanent status of the replacements is conceded. Medallion argued that it had ample documentary evidence and testimony that it did not produce on the permanence issue because it was misled by the allegations of the complaint.

The ALJ denied Medallion's motion and found against Medallion on the basis that the replacement employees were not permanent replacements and, therefore, the strikers, upon their unconditional offer to return to work, were entitled to be recalled in lieu of the replacements. The Board affirmed the ALJ's decision. Medallion now asserts that because the issue of permanence was neither pleaded nor litigated, the Board violated its due process rights by basing its decision and order on those grounds. We reject this argument.

■ Medallion correctly argues that the Board's complaint must specifically plead the charges upon which it bases its allegation that there has been a violation of the Act, and that in the absence of specific pleading, there must have been the opportunity for Medallion to fully and fairly litigate the charges. *See Boyle's Famous Corned Beef Co. v. NLRB*, 400 F.2d 154, 163 (8th Cir.1968).

Medallion cites a number of cases in which there were significant differences between the alleged violations and the violations ultimately found. In those cases, the courts held that due process had not been accorded the respondent in the agency action. *See Boyle's Famous Corned Beef Co.*, 400 F.2d at 160 (complaint alleged only that company dominated and assisted the independent union in violation of section 8(a)(1) and (2), but trial examiner went on to find refusal to bargain with the local union as a violation of section 8(a)(1) and (5)); *NLRB v. Homemaker Shops, Inc.*, 724 F.2d 535, 542–44 (6th Cir.1984) (complaint alleged charge of "unlawful assistance," but General Counsel raised charge of domination after hearing record was closed); *NLRB v. Complas Industries, Inc.*, 714 F.2d 729, 734 (7th Cir.1983) (original complaint alleged unlawful firing of one employee; the complaint was not amended until the date of the hearing to include charge of unlawful interrogation of another employee); *Presto Casting Co. v. NLRB*, 708 F.2d 495, 498 (9th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983) (complaint charged unfair labor practices connected with the strike itself; company cannot be found guilty of different violation of failing to reinstate workers).

Medallion argues that such a discrepancy exists here between the complaint's allegations and the ultimate basis for the finding of a violation. It asserts that the Board's complaint alleged a violation solely on the basis of three facts: that replacements were laid off, that vacancies occurred, and that the strikers had more seniority than the replacements. Medallion contends that these facts do not conform to the General Counsel's unpleaded theory that the replacements were temporary; thus, the General Counsel was precluded from arguing the temporary status of the employees absent an amendment to the complaint.

■ We believe that Medallion mischaracterizes the General Counsel's argument on the temporary status of the replacements by labeling it a new and inconsistent "theory." The General Counsel's theory was that Medallion recalled replacements and unlawfully refused to recall any of the strikers. This theory did not change during the proceedings. The burden was on Medallion to come forward with its own defense as to why the failure to reinstate did not amount to a violation of the Act. "[U]nless the employer can show that his action was due to 'legitimate and substantial business justifications,' he is guilty of unfair labor practices." *Fleetwood Trailer Co.*, 389 U.S. at 378, 88 S.Ct. at 545 (1967). One such justification is that the replacements were given permanent status. *Id.* at 379, 88 S.Ct. at 456; *see also NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345–46, 58 S.Ct. 904, 910–11, 82 L.Ed.2d 1381 (1938). Medallion turns the case on its head by arguing that the issue of permanence was an unpleaded theory of the case; rather, it was an affirmative defense that Medallion, not the General Counsel, was obliged to raise. As the Board stated in its brief, the permanence issue was no more conceded by the General Counsel's silence than was any other possible defense Medallion might raise.

Having determined that Medallion's due process rights were not violated, we turn to the question of whether the Board erred in finding that the replacements were temporary. Medallion argues, first, that the Board erred in holding that the replacement employees were given permanent status only if Medallion made an express offer of permanence to the employees; Medallion contends that a manifestation of "a mutual understanding," "assurances," or "commitments" of permanence is sufficient to provide a justification for retaining the replacements. Second, Medallion argues that substantial evidence in the record as a whole supports its position that there was such a mutual understanding of permanence.

■ Certainly, the employer's manifestation of its intentions regarding the permanent or temporary status of the replacements is relevant in determining whether the employer had a legitimate reason for

recalling replacements over economic strikers. *See Hot Shoppes, Inc.,* 146 N.L.R.B. 802, 804 (1964). Contrary to Medallion's claim, however, the ALJ's decision demonstrates that he adequately considered whether Medallion displayed such intentions.

■ In support of its assertion that the ALJ and the Board used an inappropriate express permanence standard to determine the status of the replacements, Medallion quotes from a portion of the ALJ's findings:

> While the record shows that the Respondent has assured most of the employees (replacements) who had attended the Company's Christmas Party on December 17, that it would make an effort to get the Company operating as soon as possible and expected the employees to be back to work, it does not indicate that the employees were ever informed that their employment status had changed to one of permanence.

Medallion's Brief at 21 (quoting ALJ Decision at 5).

This statement by the ALJ does not indicate that he is requiring a formalistic expression of permanence. Earlier in his decision he determined that when the replacements were initially hired, they were expressly informed by Medallion that their employment was temporary—it depended on how long the strike lasted. In the portion of the ALJ's findings quoted by Medallion, the ALJ is simply responding to Medallion's argument that "all [replacements] were advised by Mr. McGrady that they were permanent employees." ALJ Decision at 5 (quoting Medallion's Brief at 7, 27). The ALJ concluded that, contrary to Medallion's argument, the record shows that Medallion did not advise the replacements of any change in their initial understanding. The ALJ decided that Medallion's "assurances" after the December 10 fire were not assurances of permanent positions but were assurances only that the company had no intention of shutting down and intended to reopen for production as soon as possible. He found that nothing in these assurances altered the status quo; the replacements were still to be employed only for the duration of the strike. We conclude that the ALJ adequately considered Medallion's intentions in determining the status of the replacements.

■ Next, we turn to the question of whether the evidence is sufficient to support the Board's findings. Since the determination of whether the replacement employees are temporary or permanent is essentially a question of fact, the Board's findings are conclusive "if supported by substantial evidence on the record considered as a whole." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Vincent Brass & Aluminum Co.,* 731 F.2d 564 (8th Cir.1984).

■ An employer who refuses to reinstate strikers violates section 8(a)(1) and (3) of the Act unless he shows that his action was based on legitimate and substantial business justifications; the burden of proof is on the employer. *See N.L.R.B. v. Great Dane Trailers,* 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027; *see also N.L.R.B. v. Fleetwood Trailer Co.,* 389 U.S. at 378, 88 S.Ct. at 545. At the hearing Medallion's Personnel Director testified that the replacement workers were hired with the understanding that their employment would last only until the strike was over:

Q. When you first began interviewing replacement employees, did you interview most of those people?

A. Yes sir.

    \*    \*    \*    \*    \*    \*

Q. Did you tell Mr. Beckman [replacement employee] how long he would be working?

A. No, sir. At that time we didn't know. I told him it might be a week, it might be less and it might be more.

Q. Is that essentially what you told everybody who got hired?

A. Yes, Sir.

Q. That it might be a week, it might be less, it might be a little more?

A. They would work up until the strike was over.

Q. Until the strike was over?

A. Or the people came back.

Transcript at 69–70.

■ This evidence was essentially uncontroverted. Medallion attempted to counter this testimony by introducing evidence of later statements made to replacements. The ALJ determined, however, that these statements were not sufficient to support Medallion's contentions and, therefore, Medallion did not carry its burden of proof. Since Medallion points to no other evidence in the record that supports its position and was ignored by the Board, we conclude that the Board's findings were supported by substantial evidence in the record as a whole.

## II.

Medallion argues that the Board erred in its determination that Medallion violated section 8(a)(1) of the Act by threatening its employees for their concerted, protected activities, and asserts that, as a matter of law, the statements made to several employees by Mr. Roeder before the strike that "you guys go on strike, the Union is not coming back," were not coercive. Viewing the evidence in the record as a whole, we find Medallion's argument to be without merit.

■ Section 7 of the Act guarantees employees "the right to self-organization to form or assist labor organizations" and "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining." 29 U.S.C. § 157. Section 8(a)(1) ensures that section 7 rights are protected by making it an unfair labor practice for an employer to interfere with, restrain or coerce employees' exercising these rights. The test for a violation of section 8(a)(1) "is not whether an attempt at coercion has succeeded or failed but whether 'the employer engaged in conduct which reasonably tends to interfere with, restrain or coerce employees in the free exercise of their rights under Section 7.'" *NLRB v. Intertherm, Inc.*, 596 F.2d 267, 271 (8th Cir.1979) (quoting *Russell Stover Candies, Inc. v. NLRB*, 551 F.2d 204, 208 (8th Cir.1977)). We must examine not only the statements, but also the surrounding circumstances to determine the coercive nature of the threats. *Id.* at 275. The issue of whether such statements are threats is generally one of fact for the Board's initial consideration. *Id.*

After examining the testimony in the record, the Board made the following conclusions:

Only some of the above statements made by Respondent's supervisors to the employees were sufficiently coercive and threatening so as to interfere with their Section 7 rights. Roeder's remarks telling the employees that the Union would not come back if the employees went out on strike, was made to several employees, about one week before the strike vote by the Union, at the Company's premises and in an environment of coercion during which the employees were initially interrogated as to whether they favored a strike or not. These statements were clearly intended to dissuade the employees from their support for the Union and the strike. This conduct violated Section 8(a)(1) of the Act. His other remarks to the effect that he could give the employees pay raises if it were not for the Union was vague and further qualified with the condition that the employee perform well. Under these circumstances, Respondent did not condition a promise of benefits in exchange for the employee's refusal to support the Union. Moreover, the statements made by supervisors Cappola and Rone were not sufficiently clear and, in any case, were not made with the intent to coerce or restrain the individuals. I find therefore that Respondent violated Section 8(a)(1) of the Act only in connection with

Roeder's repeated threats to the employees as detailed above.

ALJ Decision at 9.

Keeping in mind that it is the function of the Board, not the court, to pass upon the credibility of witnesses and the weight to be given to their testimony, *R.J. Lallier Trucking v. NLRB*, 558 F.2d 1322, 1325 (8th Cir.1977), we conclude that the inferences drawn by the Board as to the threatening nature of Roeder's statements are warranted by substantial evidence in the record.

The order of the Board is affirmed.