_____

Nos. 95-3500/3779
_____

Golden Eagle Spotting Company,          *
                                        *
        Petitioner/                     *
        Cross-Respondent,               *
                                        *
    v.                                  *
                                        *
Brewery Drives and Helpers,             *      Petition for Review of an
Local Union 133, affiliated with        *      Order of the National Labor
the International Brotherhood of         *      Relations Board
Teamsters, AFL-CIO,                     *
                                        *
        Intervenor,                     *
                                        *
National Labor Relations Board,         *
                                        *
        Respondent/                     *
        Cross-Petitioner.               *

                        _____

                Submitted:  August 2, 1996

                    Filed:  August 19, 1996
                        _____

Before McMILLIAN, WOLLMAN and MURPHY, Circuit Judges.
                        _____

McMILLIAN, Circuit Judge.


        Golden Eagle Spotting Co. (Golden Eagle) petitions for review
of a portion of a final decision by the National Labor Relations
Board (Board)[1] concluding that Golden Eagle failed to bargain in
good faith when it engaged in "regressive bargaining" on the
subject of union security.  The Board cross-petitions for
enforcement of its entire decision.  For the reasons discussed
below, we deny Golden Eagle's petition for review and grant
enforcement of the Board's order.

_____

        The order of the Board is reported at 319 N.L.R.B. 10 (1995).

According to the decision of the Administrative Law Judge (ALJ) after a hearing, Golden Eagle is engaged in spotting and supervising the loading of beer products on distributor and common carrier trailers. In December 1993, the Brewery Drivers and Helpers Local Union 133 (union) was certified as the exclusive collective-bargaining representative for Golden Eagle's spotting/drivers and loading employees. At the first meeting with union officials, Golden Eagle President Richard Riesenbeck requested that future meetings be held when his consultant, Kenneth Smelcer, could attend. In March 1994, union officials gave Riesenbeck a contract proposal, but Riesenbeck indicated he did not want to begin bargaining without Smelcer. Despite Smelcer's absence at the April 15 meeting, Riesenbeck began discussing the proposal with union officials. As for the section involving union security,[2] Riesenbeck said the language was "fine" except that there was "a problem with the 31st day" because the current procedure was to have a six-month probationary period. Riesenbeck discussed thirteen other articles of the proposal, agreeing with some provisions and rejecting others; the union also agreed to delete some items. Riesenbeck never indicated he was without authority to enter into any agreement. At the next meeting on April 21, which Smelcer attended, the parties continued going through the remaining items in the union's proposal. Riesenbeck also discussed provisions at the May 12 meeting before Smelcer arrived. Upon his arrival, Smelcer stated that "[n]othing ha[d] been agreed to yet." The union's attorney disagreed and referred to those provisions to which Riesenbeck had consented. Riesenbeck

---

Article II: <u>Union Security</u>:

It is understood and agreed by and between the parties hereto that as a condition of continued employment all persons who are hereafter employed by the Employer in the unit which is the subject of this Agreement, shall become members of the Union not later than the 31st day following the beginning of their employment.

stated it was the company's position that any discussions or agreements during the earlier negotiating sessions when Smelcer was not present were no longer binding.  On June 3, Smelcer presented the union with a counterproposal which replaced the union-security paragraph with a freedom-of-choice provision.  Riesenbeck stated that some employees had indicated to him their desire not to be required to join the union.  The union attorney reminded Riesenbeck that he had indicated at the prior meeting that the only problem with the union-security provision was a probationary period.  Negotiations on an agreement halted when Riesenbeck stated in December that he would present his final offer and would begin implementing it on December 17.

The ALJ credited the testimony of the union representatives and discredited the testimony of Golden Eagle representatives.  Specifically, the ALJ discredited Riesenbeck's assertion that he never agreed to anything at the April 15 meeting.  The ALJ concluded that Golden Eagle "resorted to proscribed interference, restraint, and coercion in violation of Section 8(a)(1)" of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), and "failed to fulfill its obligation to bargain in good faith . . . in violation of Section 8(a)(5) and (1) of the Act."  The ALJ stated, inter alia, that the record was clear that Golden Eagle "repeatedly engaged in unjustified, regressive bargaining in an attempt to further frustrate and stall the collective-bargaining process," and "repeatedly violated its statutory duty to bargain in good faith by regressively withdrawing or modifying its outstanding proposals and agreements, without justification."

Adopting the ALJ's findings and conclusions, the Board ordered Golden Eagle to cease and desist from interfering with, restraining, and coercing its employees, and from failing and refusing to bargain in good faith with the union, by, inter alia, "engaging in regressive bargaining withdrawing prior agreements with respect to union security."

-3-

Golden Eagle brought this petition for review, arguing the Board's conclusion on union security was not supported by the findings of fact and was contrary to law.  Golden Eagle argues there was no meeting of the minds on union security; Riesenbeck did not accept the union's proposal; and even if there was a tentative initial agreement, Smelcer withdrew the agreement at the May 12 meeting when the company proposed a freedom-of-choice provision. In addition, Golden Eagle argues it had justification to change its position on union security because of employee reluctance to join the union.  Golden Eagle requests that we delete the words "union security" from the order and deny as moot enforcement of the remaining parts of the Board's decision, because it is fully complying with the order.

An employer commits an unfair labor practice when it refuses to bargain collectively with the representative of its employees. 29 U.S.C. § 159(a)(5).  The obligation to bargain collectively requires the parties to meet and confer in good faith.  29 U.S.C. § 158(d).  An employer's withdrawal of previous proposals or tentative agreements does not in and of itself establish the absence of good faith, but is evidence of the employer's lack of good-faith bargaining where the proposal has been tentatively agreed upon.  See Mead Corp. v. NLRB, 697 F.2d 1013, 1022 (11th Cir. 1983); see also Rockingham Machine-Lunex Co. v. NLRB, 665 F.2d 303, 305 (8th Cir. 1981) (violation found where employer rescinded or modified provisions previously agreed to), cert. denied, 457 U.S. 1107 (1982); Hartford Fire Ins. Co. v. NLRB, 456 F.2d 201, 202-03 (8th Cir. 1972) (per curiam) (retreat from previously agreed-upon items evidences failure to bargain in good faith).

We must consider the totality of the circumstances in determining whether the employer engaged in bad-faith bargaining, and the Board's determination is conclusive if it is supported by substantial evidence on the record as a whole.  Radisson Plaza Minneapolis v. NLRB, 987 F.2d 1376, 1380-81 (8th Cir. 1993).  We

-4-

will not overturn Board findings that are based on credibility determinations unless those findings shock the conscience. NLRB v. Monark Boat Co., 800 F.2d 191, 193 (8th Cir. 1986).

We believe that the Board's conclusion that Golden Eagle refused to bargain in good faith by engaging in regressive bargaining is supported by substantial evidence. Riesenbeck's failure to assert he lacked authority to bargain and his willingness to bargain on two occasions without Smelcer being present belie his contention that he was precluded from bargaining in Smelcer's absence. See NLRB v. Midvalley Steel Fabricators, Inc., 621 F.2d 49, 51-52 (2d Cir. 1980) (company president agreed to terms and bound company even though its attorney was absent).

As for Golden Eagle's contention that it had good cause to withdraw from the agreement, the Board's findings to the contrary are supported by the record. The Board discredited Riesenbeck's testimony that he knew of several employees who did not want to join the union, Golden Eagle did not call any employee to so testify, and Golden Eagle did not offer that reason when it withdrew from the agreement on May 12. Finally, Golden Eagle's uncontested violations (by other instances of bad-faith bargaining) lend support to the Board's conclusion that the withdrawal from the agreement on union security was part of a pattern to frustrate bargaining. Considering that we may not review the evidence de novo, we conclude that the inferences the Board chose are supported by substantial evidence.

Absent extraordinary circumstances, which Golden Eagle does not here assert, we may consider only the findings of the Board to which Golden Eagle has taken exception, and the remaining unchallenged findings are entitled to summary enforcement. See 29 U.S.C. § 160(e); Radisson Plaza Minneapolis, 987 F.2d at 1381-82; NLRB v. Mark I Tune-Up Centers, Inc., 691 F.2d 415, 416 n.2 (8th

Cir. 1982) (per curiam); <u>NLRB v. Douglas & Lomason Co.</u>, 443 F.2d 291, 293 (8th Cir. 1971).

Accordingly, we deny the petition for review and grant enforcement of the Board's decision.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.