WCCO RADIO, INC., A DIVISION OF MIDWEST COMMUNICATIONS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 87–5125.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1987.

Decided April 11, 1988.

Carol A. Ellingson, St. Paul, Minn., for petitioner.

Fred Cornnell, Washington, D.C., for respondent.

Before JOHN R. GIBSON, BOWMAN, and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

WCCO Radio, Inc. (WCCO or the Company) challenges a decision of the National Labor Relations Board (the Board) which held that WCCO violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), (5), by failing to provide information requested by the American Federation of Television and Radio Artists (AFTRA or the Union). The Board cross-applies for enforcement of its order requiring the Company to supply the requested information. We affirm the Board's decision and enforce its order.

### I.

WCCO operates a radio station in Minneapolis. AFTRA is the collective-bargaining representative for a unit of WCCO employees composed of announcers, producers, broadcast journalists, traffic reporters, and broadcast meteorologists. To prepare for upcoming collective bargaining sessions, in January 1986 AFTRA requested ten "items" of information on bargaining unit members. WCCO provided the first six items (and they are not at issue), but re-

fused to supply the remaining four items, which were (7) the retainer fee paid the associate announcer; (8) a list of all programs and the fee that "attaches to" each program for each announcer; (9) a list of the salary, shifts, programs, and fees attaching to each program for every producer, broadcast journalist, and broadcast meteorologist; and (10) a copy of all personal contracts.[1] AFTRA found WCCO's offer of alternative information inadequate and filed a charge with the Board alleging that WCCO had violated the Act by failing to bargain collectively.

Despite the unfair labor practice charge, the Union and Company continued to discuss possible settlements. At the heart of the controversy was a conflict between WCCO's desire to keep the requested information confidential and AFTRA's need to have the information to perform its collective-bargaining duties. In response to the Company's concerns, AFTRA's Executive Secretary, John Kailin, assured WCCO's General Manager, Clayton Kaufman, that AFTRA would take steps to protect the confidentiality of the information. But Kailin also said that AFTRA could not accept conditions on disclosure that would preclude the Union from using the information to check contract compliance or formulate bargaining proposals.

During one meeting, Kailin renewed AFTRA's previous requests and presented Kaufman with a letter asking for the following additional information (numbered as in the letter): (11) accounting or payroll records containing the actual compensation received by each unit employee from April 1, 1984 through February 28, 1986; (13) current "personnel manual provisions" describing benefits for non-unit employees; and (15) copies of "all payroll or personnel or accounting records" setting forth the number of regular and overtime hours worked by each unit member since April 1, 1983 or the date of the employee's current personal service contract.[2] The letter explained that AFTRA needed this information "to prepare for current contract negotiations" and to consider the "interplay" and "conflicts" between personal contracts and the collective-bargaining agreement. Appendix of Petitioner (App.) at A–38 to –39. WCCO expressed concern that the information remain confidential.

Discussions aimed at resolving the dispute continued through March and April 1986. During this period a number of settlement proposals were considered.[3] The

---

1. In a subsequent letter to WCCO, AFTRA clarified its requests. Concerning items (8) and (9), AFTRA wanted a list of all programs performed and the *"actual dollar amount"* paid in fees for each program. Appendix of Petitioner (App.) at A–29 (emphasis in original). Regarding item (10), AFTRA sought not only formal personal service contracts "but also letters of agreement, memoranda of agreement and every kind of agreement, written or oral, between [WCCO] and members of the AFTRA bargaining unit." *Id.*

2. This letter also requested items numbered (12) and (14). The Board found that items (12) and (14) did not exist and that item (15) did not exist for employees working under personal service contracts. The parties do not dispute those findings.

3. AFTRA said it would strictly limit the number of Union people having access to the information and would protect its confidentiality. WCCO offered to provide the retainer fee (item (7)); the benefit information (item (13)); and the hourly information (item (15)) (as it applied to employees not working under personal service contracts). WCCO was less generous with regard to items (8) through (11). Concerning

items (8) and (9), WCCO offered "a copy of the program logs for a representative one week period, 24 hours each day," and a list of all programs and the fees attaching to them. However, WCCO said that AFTRA could determine the "per performance" compensation earned under personal contracts from monthly pension and welfare reports; if that information was insufficient, the Company would supply items (8) and (9) to AFTRA's accountant, provided the accountant agree not to reveal the information to others and use it only to check compliance with the collective-bargaining contract. Regarding item (10), WCCO offered to make available to AFTRA's attorney copies of all personal service contracts and other written agreements, with specific amounts of compensation deleted (except any amount identified as consideration for a covenant not to compete), provided the attorney agree not to reveal the information to others and use it solely to check compliance with the collective-bargaining contract. As for item (11), WCCO offered to disclose some of the payroll data to AFTRA, but data on employees compensated pursuant to personal service contracts would be available solely to AFTRA's attorney and only under the conditions applying to the offer for item (10).

parties were unable, however, to reach an agreement, and eventually they presented the dispute to an administrative law judge (ALJ). The ALJ determined that WCCO had violated sections 8(a)(1) and 8(a)(5) of the Act by failing to timely provide AFTRA with items (7), (8), (9), (10), (11), (13), and (15). His recommended order required WCCO to furnish the information requested in items (8), (9), (10), (11), (13), and (15).[4] The Board affirmed the ALJ's rulings, findings, and conclusions and adopted his recommended order.[5]

## II.

The scope of our review here is very narrow. We must affirm the Board's decision if it is substantially supported by the evidence and reasonably based in law. *Bauer Welding & Metal Fabricators, Inc. v. NLRB*, 758 F.2d 308, 309 (8th Cir.1985); *NLRB v. Vincent Brass & Aluminum Co.*, 731 F.2d 564, 566 (8th Cir.1984).

■ The central issue in this case is whether WCCO has violated its duty under the Act to bargain in good faith. The duty to bargain in good faith requires, *inter alia*, an employer to furnish information needed by the employees' bargaining representative to perform its duties. *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); *Procter & Gamble Mfg. Co. v. NLRB*, 603 F.2d 1310, 1315 (8th Cir.1979). The duty "extends to data requested in order properly to administer and police a collective bargaining agreement as well as to requests advanced to facilitate the negotiation of such contracts." *Oil, Chem. & Atomic Workers Local Union No. 6-418 v. NLRB*, 711 F.2d 348, 358 (D.C.Cir.1983). *Accord Procter & Gamble*, 603 F.2d at 1315. Failure to provide such information, in the absence of a valid countervailing reason, constitutes a violation of sections 8(a)(1) and 8(a)(5) of the Act. *See Salt River Valley*

*Water Users' Ass'n v. NLRB*, 769 F.2d 639, 641 (9th Cir.1985); *New Jersey Bell Tel. Co. v. NLRB*, 720 F.2d 789, 790–91 (3d Cir.1983); *Soule Glass & Glazing Co. v. NLRB*, 652 F.2d 1055, 1094 (1st Cir.1981); *see also Detroit Edison Co. v. NLRB*, 440 U.S. 301, 318, 99 S.Ct. 1123, 1132, 59 L.Ed. 2d 333 (1979) (union interests in obtaining information do not always predominate over other interests).

■ The threshold question in a case such as this is one of relevance. "If the information requested has no relevance to any legitimate union collective bargaining need, a refusal to furnish it could not be an unfair labor practice." *Emeryville Research Center, Shell Dev. Co. v. NLRB*, 441 F.2d 880, 883 (9th Cir.1971). There is little doubt that the information requested by AFTRA is relevant. AFTRA sought data on compensation received, programs performed, and hours worked by unit members.[6] "Information pertaining to the wages, hours and working conditions of employees in the bargaining unit is so intrinsic to the core of the employer-employee relationship that it is considered presumptively relevant." *Procter & Gamble*, 603 F.2d at 1315. *Accord Oil, Chem. & Atomic Workers*, 711 F.2d at 359. Because the information requested by AFTRA was presumptively relevant, WCCO had the burden of proving its irrelevance. *See San Diego Newspaper Guild, Local 95 v. NLRB*, 548 F.2d 863, 867 (9th Cir.1977).

WCCO contends that AFTRA implicitly conceded the irrelevance of the personal contracts and overscale compensation by stating in a report to its members that "[o]nly [Kailin] and [U]nion attorneys would ever *see* any individual contract." App. at A–44 (emphasis in original). WCCO argues that it is inconsistent for AFTRA to insist that the information is relevant to the Union's collective-bargaining responsibilities while promising that

---

4. WCCO eventually provided item (7). Item (15) was to be furnished only for employees without personal service contracts. *See supra* n. 2.

5. *See* 282 N.L.R.B. 159.

6. AFTRA also requested "personnel manual provisions" describing benefits for *non-unit* employees. This information would likely help the Union to formulate benefit proposals for unit members and is therefore relevant. *See Proctor & Gamble*, 603 F.2d at 1315.

the information will not be given to the Union's collective-bargaining representatives. We find this argument unpersuasive. It fails to recognize that Kailin, who would see the personal contracts, is himself the primary negotiator for the Union, and it ignores AFTRA's interest in having the information to check compliance with the collective-bargaining agreement. Moreover, the report explicitly states that AFTRA needs the information to "grieve contract violations" and "negotiate gains for overscale performers." App. at A–44. Far from being an admission of irrelevance, the language WCCO cites was simply intended to indicate that AFTRA would accommodate wishes for confidentiality by handling the information discreetly.[7]

Although the information AFTRA requested is relevant, this does not end our analysis, for an employer's obligation to furnish such information is not absolute. Where, as here, the employer presents reasons for keeping the information confidential, the court should "weigh the competing interests of the employer and the union in the requested information, and the type and extent of disclosure required will depend on 'the circumstances of the particular case.'" *Soule Glass*, 652 F.2d at 1094 (quoting *Detroit Edison*, 440 U.S. at 314–15, 99 S.Ct. at 1130–31). This is true for information either shown or presumed to be relevant. *Soule Glass*, 652 F.2d at 1094.

WCCO argues that the requested information should not be furnished for three reasons: (1) some employees prefer that the information remain confidential; (2) the information constitutes trade secrets; and (3) disclosure might result in misuse of the information or employee harassment. We disagree. The need for confidentiality may in some circumstances excuse an employer from providing information needed by a union, but not in this case. Here, WCCO's concerns do not outweigh AFTRA's interest in having the information.

One of the consequences of collective bargaining is that it subordinates the particular interests of individual employees to the collective interest of the unit. Hence, a preference for confidentiality on the part of some WCCO employees does not nullify AFTRA's right to the information. *See NLRB v. Jaggars–Chiles–Stovall, Inc.*, 639 F.2d 1344, 1347 (5th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981); *The Detroit News, a Div. of The Evening News Ass'n v. NLRB*, 270 N.L.R.B. 380, 381–82 (1984), *enforced*, 759 F.2d 959 (D.C.Cir.1985). It does, however, underscore the need to guard against inappropriate disclosure. AFTRA is aware of the confidentiality concerns and has expressed willingness to accommodate them by, for example, offering to limit the number of people who would have access to the information. The Board noted:

> Kailin has repeatedly assured [WCCO] that [AFTRA] understood and appreciated these [concerns] and would accommodate them by appropriate security measures within the Union. There is no reason to doubt the sincerity of the Union's promise to be circumspect in handling this information or to doubt its ability to do so.

App. at A–16. The Board thus has expressed faith in AFTRA's assurances that the Union will handle the information in a manner that adequately protects its confidentiality. On the record before us, we have no basis for believing that the Board's confidence in AFTRA's assurances is misplaced.

WCCO's contention that the information constitutes trade secrets is without merit. The statute WCCO cites defines "trade secrets," in part, as information not "readily ascertainable [through] proper means" by persons who can obtain economic value from its disclosure or use. Minn. Stat.Ann. § 325C.01 subd. 5 (Supp.1988). Since nothing prohibits disclosure by

---

7. We also reject WCCO's related argument that it is "contrary to law to hold that Kailin is entitled to information which he promises not to reveal to the [unit] members." Brief of Petitioner at 22. WCCO's argument is based on the notion that all information needed by union representatives to perform their duties must, upon receipt, be disclosed to unit members. WCCO cites no authority supporting that proposition and we decline to embrace it.

WCCO employees, competitors can legitimately obtain the information by simply asking the employees for it. We agree with the Board that "information which may be so freely disclosed at the whim of any employee possessing it" is not a trade secret. App. at A–16.

■ WCCO's concerns about misuse of the information and employee harassment are likewise without support in the record. The evidence does not suggest that as a result of disclosure employees would be faced with the kind of "clear and present danger" that warrants nondisclosure. *See Soule Glass*, 652 F.2d at 1096–97; *NLRB v. A.S. Abell Co.*, 624 F.2d 506, 510–12 (4th Cir.1980); *Shell Oil Co. v. NLRB*, 457 F.2d 615, 616–20 (9th Cir.1972).

In addition to arguing that its confidentiality concerns outweigh AFTRA's need for the information, WCCO contends that it was excused from providing the information because (1) its offers of alternative information were sufficient; (2) AFTRA waived its right to bargain about personal service contracts and overscale compensation; and (3) AFTRA prematurely resorted to the Board. We uphold the Board's rejection of these contentions.

■ The Board found that the information WCCO offered was incomplete, "not necessarily accurate," and only marginally useful. App. at A–16. The record supports this finding. For example, WCCO's offer to provide program logs for a single week would be of little assistance in determining employees' incomes for an entire year since their assignments frequently vary. Because an employer does not fulfill its duty to disclose by providing only partial or unhelpful information, *see Soule Glass*, 652 F.2d at 1093; *NLRB v. Borden, Inc., Borden Chem. Div.*, 600 F.2d 313, 318 (1st Cir.1979), by offering what it did

WCCO has not satisfied its statutory obligation.

■ We find no merit in WCCO's assertion that AFTRA waived its right to bargain over personal service contracts and overscale compensation. A waiver of a right to bargain over such matters must be "clear and unmistakable" and "there must be a conscious relinquishment by the union, clearly intended and expressed to give up that right." *Procter & Gamble*, 603 F.2d at 1318. The record contains no evidence of such an express waiver.

■ Finally, the record provides substantial support for the Board's rejection of WCCO's argument that AFTRA prematurely resorted to the Board. AFTRA had requested similar information in previous negotiations and WCCO had refused to comply. This time, when WCCO again offered only inadequate alternative information, AFTRA filed the unfair labor practice charge. But even after filing the charge, AFTRA continued to discuss with WCCO possible settlements. AFTRA explained to WCCO why its offers were unacceptable and responded to WCCO's desire for confidentiality by proposing to limit the number of Union people who would receive the information. We do not consider this "stonewalling," but an acceptable attempt to reach a compromise. *See NLRB v. St. Joseph's Hosp.*, 755 F.2d 260, 264–65 (2d Cir.), *cert. denied, New York State Nurses Ass'n v. St. Joseph's Hosp.*, 474 U.S. 827, 106 S.Ct. 87, 88 L.Ed.2d 71 (1985).

The Board's order is ENFORCED.[8]

---

**8.** Concerning item (15), WCCO argues that "the company responded in full [since] the evidence demonstrates that it keeps no time records for unit members." Brief of Petitioner at 42. This is inconsistent with WCCO's March 18, 1986 offer to disclose item (15) to the Union except insofar as it pertains to employees compensated pursuant to personal service contracts and other similar agreements. *See* App. at A–10; Respon-

dent's Exhibit 3. Additionally, while the Board found that item (15) did not exist for employees working under personal service contracts, it did not find that there were no time records for *any* unit members. If some unit members do not work under personal contracts and there are time records for these employees, WCCO must provide the information.