**ROSEVILLE DODGE, INC., formerly City Dodge Center, Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 88–5319.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1989.

Decided Aug. 23, 1989.

Rehearing Denied Sept. 11, 1989.

---

David R. Hols, Minneapolis, Minn., for petitioner.

John Fawley, NLRB, Washington, D.C., for respondent.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Roseville Dodge seeks review of a National Labor Relations Board decision holding that two separate work stoppages by an unrepresented group of employees were protected activities for which they could not be discharged. The questions raised are whether, under the circumstances of this case, one of the work stoppages was an unprotected, partial or intermittent strike and whether the other was an unlawful occupation of property. We find substantial evidence in the record supporting the Board's findings on both of these questions.

## I. BACKGROUND

In August, 1986, petitioner's mechanics discussed their concerns regarding pay scales, shop supplies, and what they considered to be improper treatment by Ruben Przybilla, the company controller. These discussions culminated in a group decision [1] on or about August 26 that Robert Cozatt, as the group's spokesman, request petitioner's president, William Hatfield, to meet with all of them to discuss their grievances. They decided not to approach Hatfield until August 29 because Chrysler representatives were visiting the facility and the employees did not want to interrupt Hatfield while the Chrysler people were present.

The mechanics were scheduled to begin work at 8:00 a.m. on August 29, but failed to do so. Instead, they gathered in the break area and decided not to work until Hatfield agreed to meet with them and discuss their grievances. Accordingly,

---

1. Present were Mechanics Cozatt, Rowland, Elliott, Manning, Hostetler, and Ellefson.

when one of their supervisors, service coordinator Carl Torres, asked why they were not working, Cozatt told Torres that they were not going to work until they had a meeting scheduled with Hatfield for the purpose of discussing shop problems. Torres suggested they put their grievances in writing for him to take to Hatfield. The mechanics declined to do so on the ground that this had previously been tried and failed to bring results. Torres left and reported to Przybilla that the men were refusing to work until they met with Hatfield. Przybilla consulted with Hatfield via the telephone. Hatfield instructed that the employees be told to go to work or go home. Przybilla and Torres then met with the mechanics in the breakroom at about 9:00 a.m. There is some confusion regarding who said what, but the National Labor Relations Board[2] was persuaded that it was Przybilla, not Torres, who told the employees to go to work or go home. The Board credited the mechanics that Torres and/or Przybilla told them their workplace was closed and they should return on September 2.[3] The Board concluded that this was said after the mechanics clearly indicated they would not accept the return to work option, and that it was said for the purpose of persuading the mechanics to leave the premises inasmuch as they were clearly not going to work. Two mechanics left the premises, but four remained. At about noon, Hatfield read a prepared statement to the remaining mechanics. His message was short and simple. They had the options of going to work, leaving the premises, or remaining on the premises and being terminated. Hatfield refused to respond to Cozatt's inquiry as to whether Hatfield would schedule a meeting with the employees. The remaining mechanics then left the premises. That afternoon petitioner placed a help wanted advertisement in the local newspaper offering a $500 starting bonus to new mechanics.

The following work day, September 2, all the mechanics returned to work at the scheduled hour and completed the workday without incident. The mechanics had decided, during a brief meeting, to work and await an approach from management regarding their request for a meeting. None came. This was not, however, the end of the matter. The following day, September 3, the mechanics did not punch in as scheduled. After discovering that their immediate supervisor had been discharged the day before, Cozatt met with Roland, Manning, Rosa, Elliott and Ellefson outside petitioner's facility shortly before 8:00 a.m. The discharge of their immediate supervisor caused the employees some concern because they had regarded him as a sympathetic intermediary between them and higher management. By this time, they had also seen petitioner's newspaper advertisements which they considered as an indication that petitioner intended to replace them with new hires. Next, these six employees went to a nearby restaurant where they agreed they would again request a meeting for the purpose of discussing (1) the newspaper ad which they feared meant they were going to be replaced, (2) who might be terminated, (3) the pay scale, (4) shop supplies, and (5) Przybilla's attitude. They had no plan to take any action to protest their supervisor's discharge. The six of them returned to petitioner's service department between 9:30 and 10:00 a.m. According to Cozatt, Elliott and Manning,[4] they were met by Torres, who abruptly told them they were terminated but gave them permission to take their personal tools from the facility.

On the afternoon of September 3, Torres, and apparently Hatfield, interviewed applicants who had responded to the newspaper advertisement. Torres testified that he hired Allen Potter, William Potter, William Jaskulke, Robert Morris and Michael Rehl-

---

**2.** This case was tried in front of an Administrative Law Judge. Subsequently, the Board affirmed the ALJ, accepting all of the ALJ's rulings and findings.

**3.** Roseville Dodge does not on appeal to this Court challenge any credibility findings.

**4.** Rowland, Rosa and Ellefson did not testify. Elliott's written statement of September 5, 1986, is consistent with the testimony before the ALJ.

ing by 6:00 p.m. on September 3. According to Torres, William Potter replaced Cozatt, Rehling replaced Elliott; Morris replaced Manning; Allen Potter replaced Rowland; and Rosa and Ketchmark had been replaced. The Board found that no one had replaced any of the alleged discriminatees when they were terminated on September 3.

On September 4, Ellefson was permitted to return to work on the ground he had not been replaced. Schutz had returned to work as directed and therefore continued as an employee.

Petitioner directed letters to Peter Rowland, Mark Elliott, Robert Cozatt, and Jerome Rosa in 1986, on October 17, 20, 24 and 27 respectively, signed by Torres and reading as follows:

> City Dodge [prior name of Roseville Dodge] presently has a job opening in a position for which you are qualified. You are hereby offered reinstatement to the Service Department of City Dodge. Please report for work within five days of this letter. If you do not report and do not otherwise call in response to this letter, we will assume you are not interested and proceed with other hiring.

On the basis of the above, the Board held that the petitioner violated section 8(a)(1) of the National Labor Relations Act by discharging the mechanics and ordered petitioner to unconditionally reinstate the mechanics and to make them whole for all wages lost as a result of their unlawful discharge. Distinguishing *NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1939), and *Peck, Inc.*, 226 NLRB 1174 (1976), the Board concluded that the August 29th refusal to work unless and until Hatfield agreed to meet with them and discuss their concerns on matters clearly related to wages and working conditions was a protected concerted activity. The Board found that the facts in the instant case indicate that the employees were not engaged in an unprotected sit-down strike or plant seizure. Moreover, the Board found that the mechanics did not work on September 3 because they were uncertain what course of

action to take in the light of petitioner's failure to contact them on September 2 and the help wanted advertisement and not because the mechanics had a preconceived plan of action. Finally, the Board concluded that the petitioner's contention that the mechanics were lawfully replaced was without merit.

## II. DISCUSSION

■ Section 7 of the Act guarantees employees the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a)(1) implements this guarantee by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7." The Board's factual findings are conclusive if they are supported by substantial evidence on the record as a whole even if the reviewing court would have drawn different inferences had the matter been before it in the first instance. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Senoore, Inc.*, 558 F.2d 433, 435 (8th Cir.1977).

The petitioner argues that the Board's findings that the employees lawfully occupied the petitioner's premises on August 29 and did not engage in an unlawful intermittent strike are not supported by substantial evidence. We disagree.

■ The petitioner contends that the employees lost the protection afforded strikers under the Act because, on August 29, the employees wrongfully remained at their work stations in an unlawful occupation of property. Employees' forcible seizure of an employer's property during a strike—a so-called sitdown strike—has been held to remove the employees from the protection of the Act. *See NLRB v. Fansteel Metallurgical Co.*, 306 U.S. 240, 247, 252–58, 59 S.Ct. 490, 492, 494–97, 83 L.Ed. 627 (1939) (employees seized and retained possession of employer's plant for several days). However, not every strike in which strikers remain on the premises amounts to an unlawful deprivation of an employer's rights. As this Court has held,

employees may remain on an employer's property "in a sincere effort to meet with management concerning a protest over wages ... without being deprived of the protection of the Act." *Crenlo, Div. of GF Business Equipment, Inc. v. NLRB*, 529 F.2d 201, 204 (8th Cir.1975). *Accord NLRB v. Pepsi–Cola Bottling Co. of Miami*, 449 F.2d 824, 829–30 (5th Cir.1971) (employees engaged in a peaceful work stoppage to protest employee discharges did not engage in sitdown strike), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2434, 32 L.Ed.2d 683 (1972); *Golay & Co. v. NLRB*, 371 F.2d 259, 261–62 (7th Cir.1966) (employees who loitered on employer's premises for nearly two hours as part of protest over employee discharges did not engage in sitdown strike), *cert. denied*, 387 U.S. 944, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967); *NLRB v. American Mfg. Co.*, 106 F.2d 61, 67–68 (2d Cir.) (employees who engaged in a work stoppage and remained on employer's premises for nearly two hours to protest employer's failure to bargain did not engage in sitdown strike), *modified on other grounds*, 309 U.S. 629, 60 S.Ct. 612, 84 L.Ed. 988 (1939); *Cudahy Packing Co.*, 29 NLRB 837, 867–68, *enforced*, 123 F.2d 63 (8th Cir.1949) (employees engaged in a work stoppage to protest working conditions did not engage in sitdown strike).

■ In the instant case, the Board found that the four employees who had remained for a limited period of time—two to three hours—on the company's premises were there in the hope of presenting their work-related complaints to its president. Substantial evidence confirms this finding. The evidence shows that this work stoppage was a peaceful attempt by unsophisticated workers to notify the company—which did not have a grievance procedure—of their dissatisfaction with working conditions because other methods of communication had proven futile.

The conduct of the employees is quite distinguishable from conduct condemned as a sitdown strike in those cases cited by the petitioner. There is no evidence suggesting that the employees seized any portion of the petitioner's property, engaged in acts of violence, caused any property damage, or interfered with other employees or the business of the employer. *See Fansteel*, 306 U.S. at 247–49, 59 S.Ct. at 492–93 (ninety-five employees seized employer's plant, refused demands from employer and police to evacuate the plant, ignored a state court's injunction and contempt order to surrender the premises, and repelled attempts by the sheriff to evict them); *Peck, Inc.*, 226 NLRB 1174, 1178 (1976) (employees remained after the end of the last shift, seized a portion of the premises, and prevented the employer from closing the plant). The employees' activities on August 29 remained protected because they waited peacefully on the petitioner's premises to present their complaints and because their conduct did not amount to a significant occupation of the premises. To hold otherwise would render the protection set forth in Section 7 of the Act meaningless.

■ The petitioner also contends that the employees lost the protection afforded strikers under the Act because they engaged in an intermittent strike. Harassing techniques, such as intermittent or recurrent strikes, have been held unprotected because they produce a situation that is "neither strike nor work." *NLRB v. Robertson Industries*, 560 F.2d 396, 398 (9th Cir.1976). Substantial evidence supports the Board's conclusion that the employees' actions in the instant case did not amount to an intermittent strike. The employees decided to go to a nearby restaurant on September 3 in order to formulate a response to petitioner's recent failure to respond to their request for a meeting, firing of their immediate supervisor and advertisement for new hires. They did not have a preconceived plan to engage in a series of strikes to harass the petitioner. *See, e.g., NLRB v. Blades Mfg. Co.*, 344 F.2d 998, 1005 (8th Cir.1965) (three one-day work stoppages in less than two weeks, undertaken pursuant to a preconceived and continuing plan to stop work each time the company refused to adjust grievances, were unprotected intermittent work stoppages). Moreover, there is nothing in their conduct to give rise to a reasonable belief

on the part of the petitioner that the employees were participating in an intermittent strike.

■ Therefore, the Board's finding that the employees did not engage in either a sitdown or intermittent strike is warranted by substantial evidence. On that basis, the Board's conclusion that the petitioner had violated section 8(a)(1) of the Act by discharging the six employees for engaging in protected, concerted activities is correct. We thus deny the petitioner's petition for review and enforce the Board's order.