965 F.2d 523
 140 L.R.R.M. (BNA) 2569, 61 USLW 2047,
122 Lab.Cas. P 10,242
 MOLON MOTOR AND COIL CORP., Petitioner--Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent--Cross-Petitioner,
and
International Brotherhood of Electrical Workers (AFL-CIO),
Local 1031, Intervenor.
 Nos. 91-1885, 91-2222.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 9, 1992.
Decided June 19, 1992.
As Amended July 15, 1992.
Rehearing and Rehearing En Banc
Denied July 27, 1992.
 
 John C. Truesdale, Paul J. Spielberg (argued), N.L.R.B., Contempt Litigation Branch, Washington, D.C., Elizabeth Kinney, N.L.R.B., Chicago, Ill., Aileen A. Armstrong, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., for N.L.R.B.
 Steven L. Gillman (argued), Davi L. Hirsch, Fox & Grove, Chicago, Ill., for Molon Motor & Coil Corp.
 Susan Brannigan, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, Ill., for Local 1031, International Broth. of Elec. Workers, AFL-CIO.
 Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 After clocking into work on February 13, 1989, a group of employees at Molon Motor and Coil Corporation (Molon) assembled in the employee breakroom located just off the production floor and refused to work until Molon agreed to a wage increase. This work stoppage lasted until management pledged to seriously consider the workers' demand and to get back to them in short order. Management did so a few days later in a letter distributed and read to all Molon employees explaining that foreign competition and rising costs prevented it from granting a pay raise at that time.
 
 
 2
 Dissatisfied with this response, twenty-two production employees engaged in another work stoppage on February 20, 1989, clocking in at 6:00 a.m., and again assembling in the employee breakroom. This time the standstill lasted several hours, during which the employees repeated their demand for higher wages while management repeated its position that costs and competition prevented any increase. This went on for over five hours until Donald Bodziak, the director of manufacturing, told the employees at 11:10 a.m., "either you go to work or you will be terminated."
 
 
 3
 When that admonition failed, twenty minutes later Bodziak gave the workers one last warning: "This is my final request. If you do not go back to work, you will be terminated for refusing to work. If you don't go back to work or don't leave, I will call the police." The workers refused to budge so Bodziak called the police, who arrived a few minutes later and informed the workers they were subject to arrest for trespass. This did the trick and the workers left without incident. A few days later, several of the workers asked for their jobs back, but Molon declined their request.
 
 
 4
 The General Counsel of the National Labor Relations Board (Board) filed a complaint against Molon alleging that it had committed an unfair labor practice under § 8 of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), by discharging workers for engaging in protected, concerted activity under § 7 of the Act. 29 U.S.C. § 157. After conducting a two-day hearing, an Administrative Law Judge (ALJ) dismissed the complaint, finding no § 8(a)(1) violation. The Board overruled that decision in Molon Motor and Coil Corp., 302 NLRB No. 13, slip op. at 6 (Mar. 21, 1991), ordering Molon to reinstate the workers and to make them whole for any lost earnings. Molon filed this petition requesting review of that order, and the Board cross-applied to enforce it. Local 1031 of the International Brotherhood of Electrical Workers (AFL-CIO) entered this case as an intervenor.
 
 
 5
 The concerted activity at issue here (i.e., an on-the-job work stoppage) is a form of economic pressure entitled to protection under § 7 of the Act. See NLRB v. Washington Aluminum Co., 370 U.S. 9, 15, 82 S.Ct. 1099, 1103, 8 L.Ed.2d 298 (1962) (work stoppage to protest lack of heat during harsh winter protected activity under § 7). Not every work stoppage is protected activity, however; at some point, an employer is entitled to assert its private property rights and demand its premises back. The line between a protected work stoppage and an illegal trespass is not clear-cut, and varies from case to case depending on the nature and strength of the competing interests at stake. See Hudgens v. NLRB, 424 U.S. 507, 522, 96 S.Ct. 1029, 1037, 47 L.Ed.2d 196 (1976); NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956).
 
 
 6
 Drawing that line requires courts to balance "whether the means utilized by the employee in protesting, when balanced against the employer's property rights, are entitled to the protection of the Act." Peck, Inc., 226 N.L.R.B. 1174, 1175 (1976) (Member Pennello, concurring); compare Golay & Co. v. NLRB, 371 F.2d 259, 262 (7th Cir.1966) (work stoppage protected because employer refused to discuss the matter and hastily discharged the workers without any warning to leave the property), cert. denied, 387 U.S. 944, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967); Roseville Dodge, Inc. v. NLRB, 882 F.2d 1355, 1359 (8th Cir.1989) (peaceful work stoppage on the shop floor, lasting several hours, protected, concerted activity); NLRB v. Pepsi-Cola Bottling Co., 449 F.2d 824, 829-30 (5th Cir.1971) (peaceful, unobtrusive work stoppage protected activity and employer's order to leave plant hindered ability to present grievances), cert. denied, 407 U.S. 910, 92 S.Ct. 2434, 32 L.Ed.2d 683 (1972) with NLRB v. Fansteel Metallurgical Corp., 306 U.S. 240, 252, 255, 59 S.Ct. 490, 494, 496, 83 L.Ed. 627 (1939) (employees who seized and retained possession of employer's plant for several days engaged in illegal trespass); Advance Indus. Div.--Overhead Door Corp. v. NLRB, 540 F.2d 878, 885 (7th Cir.1976) (workers who neglected ordinary grievance procedure and refused to leave premises after shift ended engaged in illegal trespass); Cone Mills Corp. v. NLRB, 413 F.2d 445 (4th Cir.1969) (workers who continued their in-plant work stoppage in spite of established grievance procedures and a hearing from management engaged in illegal trespass); Peck, Inc., 226 N.L.R.B. at 1180 (workers who occupied the employee lunchroom after shift ended engaged in illegal trespass).
 
 
 7
 Here, the ALJ found factors cutting both ways. In the employees' favor, the ALJ found that they were peaceful, did not interfere with other employees' use of the breakroom, and entered the plant when their shift began and left before it ended. In Molon's favor, the ALJ found that it did not engage in an unfair labor practice that triggered the work stoppage, did not act precipitously in firing the workers, and that the workers adamantly refused to leave the plant even after five hours of negotiations. The ALJ concluded that although the work stoppage was protected, concerted activity at its inception, the workers insistence on remaining in the plant for such an extended period of time transformed it into an illegal trespass. The ALJ found no compelling reason for the employees to continue protesting in the plant, rather than outside the plant where economic strikes traditionally occur, and hence found no Section 8(a)(1) violation.
 
 
 8
 The Board took a different tack. It agreed with the ALJ that the workers were engaged in protected, concerted activity but did not employ the aforementioned balancing test. The Board, unlike the ALJ, questioned as an initial matter Molon's proffered motivation (i.e., trespass) for firing the workers. Hence, the Board applied the burden shifting scheme outlined in Wright Line, 251 N.L.R.B. 1083 (1980), enforced on other grounds, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), and subsequently approved by the Supreme Court in NLRB v. Transportation Management Corp., 462 U.S. 393, 402-03, 103 S.Ct. 2469, 2474-75, 76 L.Ed.2d 667 (1983), for analyzing issues of employer motivation. Under Wright Line, the General Counsel must first establish a prima facie case that protected activity was a "motivating factor" in an employer's decision to discharge employees. Once established, the burden shifts to the employer to show by a preponderance of the evidence that it would have taken the same action even absent the prohibited motivation. If unable to make this showing, the employer is in violation of § 8(a)(1). Wright Line, 251 N.L.R.B. at 1089. Applying this test, the Board concluded that the General Counsel had presented a prima facie case of unlawful motivation by presenting "overwhelming evidence" that Molon's actions were motivated solely by the employees' concerted activity and that Molon failed to carry its burden of showing it would have discharged the workers even absent the concerted activity.
 
 
 9
 Our task is limited to determining whether the Board's factual findings are supported by substantial evidence in the record and whether its legal conclusions have a reasonable basis in the law. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); 29 U.S.C. § 160(e). This standard remains constant even when the Board and the ALJ disagree over legal issues or derivative inferences drawn from the evidence. NLRB v. Augusta Bakery Corp., 957 F.2d 1467, 1471 (7th Cir.1992); Weather Shield Mfg., Inc. v. NLRB, 890 F.2d 52, 57-58, 59 n. 2 (7th Cir.1989). However, if the Board disagrees with the ALJ over a demeanorbased finding, we give that order "special scrutiny" because of the ALJ's unique ability to observe witnesses first-hand. Universal Camera, 340 U.S. at 493, 71 S.Ct. at 467; Weather Shield, 890 F.2d at 57-58.
 
 
 10
 Molon asserts that this case deserves special scrutiny. We disagree. The facts are not in dispute and the divergent conclusions reached by the Board and ALJ result from a derivative factual inference (concerning Molon's motivation for the firings) drawn by the Board and not the ALJ. This inference did not rest on the demeanor of any witnesses and hence we proceed under the substantial evidence test.
 
 
 11
 The motivation issue boils down to whether Molon fired the striking workers for refusing to take the strike outside the plant (a lawful motivation) or for refusing to work (an unlawful motivation). The Board found no evidence to suggest the workers would have avoided termination had they simply taken the strike off-premises and plenty of evidence to suggest that returning to work was the only choice the workers faced if they wished to keep their jobs. Employers are not entitled to put workers to that choice so the Board found a § 8(a)(1) violation.
 
 
 12
 The Board rested its conclusion on a number of facts. First, it relied on Bodziak's final plea, in which he declared, "If you do not go back to work, you will be terminated for refusing to work. If you don't go back to work or don't leave, I will call the police." In the Board's view, this statement clearly informed the employees that they had only one option if they did not wish to lose their jobs: return to work. It did not provide the option of taking the work stoppage off premises to avoid termination; that option was offered only as a means of avoiding arrest should the employees decide to continue their work stoppage. Second, the Board relied on a document in Molon's personnel records which summarized the dispute as follows:
 
 
 13
 At approximately 11:30 A.M. on Monday, February 20, 1989, [22 Molon employees] were asked to either go to their regularly assigned work stations and start to work, or leave the premises since they were being terminated for refusing to work. They would not return to work, and refused to leave the premises. At this time the above listed individuals were advised that they were terminated and were trespassing.
 
 
 14
 General Counsel's Ex. 2 (emphasis added). This confirmed that Molon gave the workers only one choice (i.e., returning to work) before dismissing them. Third, the Board relied upon an admission by Bodziak at the hearing which confirmed the presence of an unlawful motivation; when asked why the employees were terminated, he replied, "Basically [for] refusing to work."[1]
 
 
 15
 Having found a prima facie case, the Board turned to Molon's affirmative defense for its actions and concluded Molon failed to meet its burden of showing it would have fired the workers even absent the work stoppage. Molon's only lawful justification for doing so was an illegal trespass by the workers; the Board handled this argument in summary fashion, having already concluded that this justification played no role in the firings. Hence, the Board found that Molon had failed to carry its burden and concluded that it had violated § 8(a)(1).
 
 
 16
 Molon challenges both steps in the Board's Wright Line analysis. It first maintains that the Board's prima facie case of unlawful motivation rests on a selective review of the record. Molon argues that, contrary to the Board's finding, Bodziak's final request--"If you don't go back to work or don't leave, I will call the police"--did present two options, one of which was moving the strike outside the plant. Moreover, Molon asserts, the Board ignored certain conduct which suggests that concerted activity played no role in its actions: Molon did not fire any workers after the first work stoppage on February 13, nor did it act hastily in firing workers during the second work stoppage on February 20, both actions demonstrating that it harbored no hostility toward the workers for engaging in concerted activity and that it simply wanted the workers to return to the job or vacate the property. Finally, Molon discounts the significance of Bodziak's memorandum to the personnel file, arguing that it was prepared eight days after the incident and was never intended to be a comprehensive summary of events. All of this, Molon asserts, shows that antiunion animus toward the work stoppage played no role in the firings and that it acted solely because of the workers' illegal trespass.
 
 
 17
 Alternatively, Molon argues that even if this evidence shows antiunion animus played some role in the firings, it would have acted the same even absent the concerted activity. Molon repeats the same arguments made above in insisting that trespass, and not retaliation for concerted activity, was its real concern. Termination was never considered during the early stages of the work stoppage; only when the workers refused to leave the plant, and the police had to be called, did it consider firing them. This shows, Molon claims, that the decision to terminate the workers was made only after Molon determined that the workers were unwilling to leave the plant under any circumstances. Molon would have fired the workers hours earlier if it truly resented the fact that they were refusing to work.
 
 
 18
 While alternate inferences are possible, we find substantial evidence in the record to support the Board's findings. The record reveals that Molon repeatedly urged its employees to go back to work and that this was Molon's immediate concern. Only one time (in Bodziak's final request to the workers) did Molon even hint that "leaving the premises" was an option. And even then the comment did not suggest that "leaving the premises" meant keeping their jobs; as noted, it was posed as a means of avoiding arrest. Perhaps Molon meant by this that the workers could indeed retain their jobs if they simply left the plant, but equally plausible is the Board's conclusion that "leave the plant" meant lose your job. No evidence suggests that Molon's real concern was in getting its employee breakroom back or moving the strike outside the building. Indeed, most evidence suggests that Molon was driven by a single motivation: getting the workers back on the job. To its credit, Molon acted patiently in negotiating with the workers. Nonetheless, the evidence suggests that Molon ultimately fired the workers because they refused to work, and refusing to work is protected activity under § 7 of the Act. While refusing to leave the plant is not protected activity, Fansteel, 306 U.S. at 240, 59 S.Ct. at 490, the mere fact that Molon's workers peacefully occupied a portion of its property does not appear to have played a role in the terminations. This might be a different case if, after several hours of negotiations, Molon had said, "You have a right to withhold your labor under the law, and we have a right to have our premises back. We have fully heard your position and you ours. If you do not choose to return to work, you must take your strike outside the plant or face termination." The distinction between this comment and the one actually delivered by Bodziak is a slender one, but so it is with attempting to glean subjective motivation from objective facts. Substantial evidence supports the Board's findings and so we DENY the petition to set-aside the Board's order and GRANT the cross-application to enforce it.
 
 
 
 [1]
 The Board added in a footnote that an admission by Molon's attorney in his opening statement (in which he declared that the employees were told that they must return to work or face termination) reinforced its finding of a prima facie case. Molon argues that the Board was not entitled to weigh this admission because opening statements do not qualify as evidence. See, e.g., United States v. Ramirez, 367 F.2d 813, 814-15 (7th Cir.), cert. denied, 385 U.S. 988, 87 S.Ct. 601, 17 L.Ed.2d 449 (1966). We need not consider this argument because counsel's admission merely corroborated the admission Bodziak would make later in the hearing and, in any event, was not a decisive factor in the Board's prima facie case