PARSONS ELECTRIC COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PARSONS ELECTRIC COMPANY,
Respondent.

Nos. 91–3144, 91–3391.

United States Court of Appeals,
Eighth Circuit.

Submitted June 8, 1992.

Decided Oct. 6, 1992.

Rehearing and Rehearing En Banc
Denied Nov. 27, 1992.

David R. Hols, Minneapolis, Minn., argued, for petitioner.

William A. Baulder, Washington, D.C., argued (Linda Dreeben and Lisa Richardson Shearin, on the brief), for respondent.

Before WOLLMAN, Circuit Judge, BRIGHT and ROSS, Senior Circuit Judges.

WOLLMAN, Circuit Judge.

Parsons Electric Company appeals from an order of the National Labor Relations Board requiring Parsons to furnish the local union, as administrator of an exclusive hiring hall, with the reason it refused to hire an applicant referred by the hiring hall. The Board cross-appeals for enforcement of its order. We reverse the order of the Board and deny the Board's application for enforcement.

I.

Parsons Electric Company (Parsons), an electrical contractor, is a member of a multi-employer bargaining unit represented by the Minneapolis chapter of the National Electrical Contractors Association (NECA). NECA is a construction trade association of approximately 4400 electrical contractors, with local chapters throughout the United States. The primary purpose of each local chapter is to act as a bargaining agent. In this capacity, the local chapter negotiates and administers collective bargaining agreements (CBA) both for member employers and for non-member employers which designate NECA as its agent.

The Minneapolis chapter of NECA entered into a collective bargaining agreement with Local 292 of the International Brotherhood of Electrical Workers (Union). This agreement established an exclusive hiring hall system of referral. Under this system, companies represented by NECA may, except in certain limited circumstances, hire electricians only from applicants referred to them by the Union hiring hall.[1] To balance this power given to the Union, each employer has the right to hire or reject any applicant.[2]

In August 1990, the Union twice referred Charles Von Ruden to Parsons Electric, and on both occasions Parsons refused to hire Von Ruden. After Von Ruden complained to the Union, the Union's business representative asked Parsons' superintendent why Von Ruden had been rejected.

---

1. Section 4.02 of the CBA provides that "[t]he Union shall be the sole and exclusive source of referral of applicants for employement (sic)."

2. Section 4.03 of the CBA states that "[t]he Employer shall have the right to reject any applicant for employment."

Section 3.03 of the CBA provides that "[t]he Union understands the Employer is responsible to perform the work required by the owner. The Employer shall therefore have no restrictions except those specifically provided for in the Collective Bargaining Agreement in planning, directing and controlling the operation of all his work, in deciding the number and kind of Employees to properly perform the work, in hiring and laying off Employees, in transferring Employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as foremen (sic), in requiring all Employees to observe the Employer's and/or Owner's rules and regulations not inconsistent with this Agreement, in requiring all Employees to observe all safety regulations, and in discharging Employees for proper cause."

The superintendent cited "past problems," but would not elaborate.

The business representative reviewed Von Ruden's record and found that he was a well-qualified electrician. Von Ruden had worked for Parsons on two previous occasions. The first period of employment was while Von Ruden was an apprentice and lasted approximately one month. The second period was while Von Ruden was a journeyman electrician and lasted approximately one year. During the latter period, Von Ruden acted as job steward. (The Union may appoint a job steward at any shop or jobs where applicants it has referred were hired. The second to last journeyman acts as the steward. Under this system, the steward is appointed after being hired.)

The Union filed a grievance against Parsons, alleging that Parsons discriminated against Von Ruden on the basis of his union involvement. The grievance cited sections 4.01 and 4.04[3] of the CBA. During the course of this grievance, the Union requested that Parsons give a written explanation of the reason it rejected Von Ruden. Parsons responded that it had not violated the CBA and instructed the hiring hall to stop requesting reasons for the rejection of applicants. The grievance committee has now tabled this grievance.

The Union then filed an unfair labor practice charge with the National Labor Relations Board (Board). An administrative law judge (ALJ) determined that the plain language of section 4.03 precluded the Union from inquiring into the reasons for the rejection of any applicant by an employer. The ALJ further determined that the Union had, through its inability to remove section 4.03 from the CBA during the last bargaining process, waived its right to information of this sort.

The Board, with one member dissenting, reversed the decision of the ALJ. *Parsons Elec. Co.*, 304 N.L.R.B. No. 115 (1991). It found that the Union had a right to the requested information because the information pertained to a grievance over the rejection of a former steward[4] and to the Union's general responsibility for administering the hiring hall provisions of the CBA. The Board further found that the Union had not waived its right to the requested information, stating that no waiver had been demonstrated by clear and unmistakable evidence. The Board ordered Parsons to state its reasons for rejecting Von Ruden.

Parsons now appeals. The Board cross-appeals, requesting enforcement of its order.

## II.

An employer has a duty to bargain collectively with the representative of its employees, and failure to do so is an unfair labor practice. 29 U.S.C. § 158(a)(5). The duty to bargain includes the duty to supply information necessary to intelligently carry out the bargaining process, including information needed to process grievances. *N.L.R.B. v. Acme Indus. Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); *WCCO Radio, Inc. v. N.L.R.B.*, 844 F.2d 511, 514 (8th Cir.), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988). With respect to matters for which the union would have no authority to bring a grievance, however, an

---

**3.** Section 4.01 of the CBA states that "[i]n the interest of maintaining an efficient system of production in the industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment."

Section 4.04 of the CBA states that "[t]he Union shall select and refer applicants for employ-

ment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selection and referral shall be in accord with the following procedure."

**4.** Section 3.18(a) of the CBA states that "[n]o Steward shall be discriminated against by any Employer because of his faithful performance of duties as Steward."

information request cannot be enforced because the information requested is not relevant to the union's duties. *N.L.R.B. v. Western Elec., Inc.*, 559 F.2d 1131 (8th Cir.1977).

■ The Board found that the Union was entitled to the requested information because the information pertained to a grievance over the rejection of a former steward and to the Union's general responsibility for administering the hiring hall provisions of the CBA.

The Board reasoned that the requested information was related to a colorable grievance. We disagree. The grievance claims that Parsons discriminated against Von Ruden because of union involvement and cites sections 4.01 and 4.04 of the CBA. Section 4.01 is a general provision, setting out the purposes of the hiring hall, one of which is to "eliminat[e] discrimination in employment because of membership or non-membership in the Union." Section 4.04 prohibits the *Union* from discriminating against applicants because of membership or non-membership in the Union. Because these two provisions relate to discrimination on the part of the Union, neither gives the Union authority to bring a grievance against Parsons for discrimination. The plain language of the CBA states that "[t]he Employer shall ... have *no restrictions* except those specifically provided for in the Collective Bargaining Agreement in ... deciding the number and kind of Employees to properly perform the work ... [and] in hiring and laying off Employees." Section 3.03 of the CBA (emphasis added). Thus, the Board has no power to enforce a request for information related to a grievance based on sections 4.01 and 4.04 of the CBA. *See N.L.R.B. v. Western Elec., Inc.*, 559 F.2d at 1134 (union has no right to information related to non-grievable matters).

Even reading the grievance broadly and assuming that the grievance includes allegations of discrimination against a former job steward (although section 3.18 is not cited in the grievance), Von Ruden was a job applicant, not a job steward, at the time Parsons refused to hire him. Had the Union been able to negotiate a clause stating that no person could be discriminated against for the faithful performance of duties as a job steward, a valid grievance might have existed and the information sought might have been relevant. Because the clause states only that a job steward may not be discriminated against, however, the Union had no authority to bring a grievance against Parsons under section 3.18.

Because we reverse the Board's order on other grounds, we need not address the ALJ's and the Board's findings regarding waiver.

The Board's order is reversed, and the Board's application for enforcement is denied.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent because this court's failure to discuss, let alone decide, this case within the context and parameters of the appropriate review standard, in my opinion, leads to an erroneous decision.

The majority appears, although never so states, to review this case *de novo*. Our jurisdictional scheme, however, denies us the opportunity to take a fresh, new look at the record. Rather, we are compelled to affirm the Board's decision if it is "substantially supported by the evidence and reasonably based in law." *WCCO Radio, Inc. v. NLRB*, 844 F.2d 511, 514 (8th Cir. 1988) (citing *Bauer Welding & Metal Fabricators, Inc. v. NLRB*, 758 F.2d 308, 309 (8th Cir.1985) and *NLRB v. Vincent Brass & Aluminum Co.*, 731 F.2d 564, 566 (8th Cir.1984)).[1] We must apply this standard even though we might hold otherwise if we were empowered to review the matter *de novo*. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Hall v. NLRB*, 941 F.2d 684, 687 (8th Cir.1991); *Roseville*

---

**1.** *Accord Schnuck Markets, Inc. v. NLRB*, 961 F.2d 700, 703–04 (8th Cir.1992); *Inter–Collegiate*

*Press, Graphic Arts Div. v. NLRB*, 486 F.2d 837, 840 (8th Cir.1973).

*Dodge, Inc. v. NLRB*, 882 F.2d 1355, 1358 (8th Cir.1989).

The narrow issue is whether the Board's decision that Parsons violated § 8(a)(1) and (5) of the NLRA by refusing to provide the Union with information about Von Ruden is "substantially supported by the evidence and reasonably based in law." In my opinion it is.

An employer under a collective-bargaining agreement has an obligation to furnish an employees' bargaining representative with the information it requires to administer and police its agreement. *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); *Proctor & Gamble Mfg. Co. v. NLRB*, 603 F.2d 1310, 1315 (8th Cir.1979). This duty includes requests for information pertaining to grievance proceedings. *WCCO Radio, Inc. v. NLRB*, 844 F.2d 511, 514–15 (8th Cir.1988). An employer's refusal to supply this information constitutes a violation of § 8(a)(1) and (5) of the NLRA. *Id.*

The test for determining when and under what circumstances an employer must furnish information turns on a question of relevancy. The information requested must have some relevance to a "legitimate union bargaining need." *WCCO Radio*, 844 F.2d at 514 (quoting *Emeryville Research Center, Shell Dev. Co. v. NLRB*, 441 F.2d 880, 883 (9th Cir.1971)). This relevancy test resembles the liberal "discovery-type standard." *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967).[2]

In making a determination of relevancy, the Board does not resolve the ultimate merits of the issue for which the information is sought. *NLRB v. Acme Indus. Co.*, 385 U.S. at 437–39, 87 S.Ct. at 568–69. Rather, the Board determines only whether there is a "probability" the information is relevant and would be helpful to the Union in satisfying its duties and responsibilities under the NLRA. *Id.* at 437, 87 S.Ct. at 568.

The Union asserts, and I agree, that the Board properly found that the information the Union seeks is relevant to its grievance processing function, as well as to its general responsibility for administering the hiring hall under the collective-bargaining agreement.

Prior to requesting the information, the Union filed a grievance alleging Parsons had rejected Von Ruden because of his activities as a union steward five years earlier when employed by Parsons. The information is relevant because it goes to the question of whether Parsons, in violation of Section 3.18(a)[3] of the collective-bargaining agreement, discriminated against Von Ruden because of his former steward position.

The majority narrowly construes Section 3.18(a) of the agreement. Assuming the majority is correct—that the provision only protects current stewards, an assumption inapposite to both the Board's interpretation and, I suggest, common sense—the information is certainly relevant in determining whether, in a broader sense, Parsons discriminated against Von Ruden because of his union membership, in contravention of Section 4.01[4] of the agreement

---

**2.** *See also Proctor & Gamble Mfg. Co. v. NLRB,* 603 F.2d 1310, 1315 (8th Cir.1979) ("a broad range of potentially useful information should be allowed to the union for the purpose of effectuating the bargaining process [whether information is relevant], unless [the information] is clearly irrelevant").

**3.** Section 3.18(a) provides, in part: "No Steward shall be discriminated against by any Employer because of his faithful performance of duties as Steward."

**4.** Section 4.01 of the agreement provides that, [i]n the interest of maintaining an efficient system of production in the industry, provid-

ing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area *and of eliminating discrimination in employment because of membership or non-membership in the Union,* the parties hereto agree to the following system of referral of applicants for employment. (Emphasis added).

Parsons argues this section, like Section 4.04, applies only to the Union's discrimination of its members. Although this seems true as to Section 4.04, it is not true of Section 4.01.

and Section 8(a)(3)[5] of the NLRA. This argument is particularly tenable in light of Parsons' claim, made prior to the Union's request for the information, that Parsons rejected him because of unspecified "past problems."[6]

As set forth in the record, the information sought is also relevant to the Union's administration of its hiring hall. Knowing the reasons for Parsons' rejection of a member enables the Union to identify for that member the areas in which further skill improvement is required. This information may also help correct errors employers may make in their selection processes.

Finally, the majority places great import on Section 4.03 of the collective-bargaining agreement, which provides "[t]he Employer shall have the right to reject any applicant for employment." The majority seems to suggest that Parsons may invoke this provision any time it wishes to avoid furnishing the Union with information concerning why it rejected someone sent from the Union Hall. Such a position is unfounded, as it exempts Parsons from complying with discrimination proscriptions set forth in the collective-bargaining agreement, the NLRA and all other state and federal anti-discrimination laws.[7]

Of equal concern are the dire policy consequences flowing from such unfettered authority. Under this scheme, the employer, in effect, assumes plenary police and enforcement authority over the Union's rights pertaining to the placement of its members. Such a position not only undermines both the spirit and policy bases on which so much of our modern federal labor law is premised, but portends deeper incursions into union sovereignty.

In my opinion, the Board's decision is reasonably based in law, and substantially supported by both the weight of the evidence presented at trial and public policy concerns. *WCCO Radio, Inc. v. NLRB,* 844 F.2d 511, 514 (8th Cir.1988). Accordingly, I would affirm the Board's decision and enforce its order.

---

5. Section 8(a)(3) of the NLRA provides, in relevant part: "It shall be an unfair labor practice *for an employer . . . by discrimination in regard to hire or tenure of employment . . .* to encourage or discourage membership in any labor organization. . . ." 29 U.S.C. § 158(a)(3) (1988) (emphasis added).

6. The Board need not prove the information resolves the grievance, the complaint is sound,

or the relief sought is supported by the facts. *NLRB v. Acme Indus. Co.,* 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967).

7. The record indicates Parsons recognized as much when, in resolving another grievance, it conceded "age discrimination is a violation of both federal law and the collective bargaining agreement." General Counsel's Ex. 7.